140 Nev., Advance Opinion 69

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NEVADA POLICY RESEARCH INSTITUTE, INC., A NEVADA DOMESTIC NONPROFIT CORPORATION,<br>Appellant,<br>vs.<br>BRITTNEY MILLER, AN INDIVIDUAL ENGAGING IN DUAL EMPLOYMENT WITH THE NEVADA STATE ASSEMBLY AND CLARK COUNTY SCHOOL DISTRICT; DINA NEAL, AN INDIVIDUAL ENGAGING IN DUAL EMPLOYMENT WITH THE NEVADA STATE SENATE AND NEVADA STATE COLLEGE AND COLLEGE OF SOUTHERN NEVADA; JAMES OHRENSCHALL, AN INDIVIDUAL ENGAGING IN DUAL EMPLOYMENT WITH THE NEVADA STATE SENATE AND CLARK COUNTY PUBLIC DEFENDER; SELENA TORRES, AN INDIVIDUAL ENGAGING IN DUAL EMPLOYMENT WITH THE NEVADA STATE ASSEMBLY AND A CLARK COUNTY PUBLIC CHARTER SCHOOL; AND THE LEGISLATURE OF THE STATE OF NEVADA,<br>Respondents. | No. 85935<br><br>**FILED**<br><br>OCT 31 2024<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order dismissing a complaint seeking a declaratory judgment and a permanent injunction concerning dual service within the executive and legislative branches of the Nevada government. Eighth Judicial District Court, Clark County; Jessica K. Peterson, Judge.

24-41119

*Affirmed.*

Fox Rothschild, LLP, and Colleen E. McCarty and Deanna L. Forbush, Las Vegas,
for Appellant.

Bravo Schrager, LLP, and Bradley S. Schrager and Daniel Bravo, Las Vegas,
for Respondents Brittney Miller and Selena Torres.

Legislative Counsel Bureau, Legal Division, and Kevin C. Powers, General Counsel, Carson City,
for Respondent Legislature of the State of Nevada.

Nevada State University and Berna L. Rhodes-Ford, General Counsel, Henderson,
for Respondent Dina Neal.

Wiley Petersen and Jonathan D. Blum, Las Vegas,
for Respondent James Ohrenschall.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

The Nevada Constitution grants each department of state government specific authority to carry out its constitutional function. Executing this authority comprises the fundamental work of governance. Individuals employed by the departments of state government labor to implement and serve these constitutional functions. Integral to performing these roles and preserving the integrity of these constitutional prerogatives is the independence of each department from coercive influence by another.



For that reason, separation of these powers stands as perhaps the most vital constitutional principle. We therefore closely scrutinize circumstances where an individual is alleged to serve simultaneously in the legislative and executive departments; such employment would present an intolerable risk that the operation of one department may be impaired by the coercive influence of another.

We thus recognize that dual service in the legislative and executive departments violates the constitutional separation of powers, but we determine that such a constitutional violation is not present here. Considering the dual employments challenged in this appeal, the Nevada System of Higher Education is organized outside the executive department, and thus dual employment with a college within that system and as a state legislator consequently does not implicate constitutional concerns. We also conclude that employment with local government does not involve the exercise of the executive authority constitutionally bestowed on the executive department and, consequently, employment as a public school teacher or public defender while serving as a state legislator does not violate the separation of powers. As the district court reached the correct outcome in dismissing the challenge to respondent legislators' employments, we affirm.

## FACTS AND PROCEDURAL HISTORY

Appellant Nevada Policy Research Institute (NPRI) filed a complaint alleging that respondents Brittney Miller, Dina Neal, James Ohrenschall, and Selena Torres violated the constitutional separation of powers and seeking declaratory and injunctive relief. Miller is a member of the Nevada State Assembly and an employee of the Clark County School District. Neal is a member of the Nevada State Senate and an employee of

Nevada State College and the College of Southern Nevada.[1] Ohrenschall is a member of the Senate and an employee of the Clark County Public Defender. Torres is a member of the Assembly and an employee of a Clark County public charter school. NPRI sought a declaration that respondents' dual service as legislators and employees of state or local government violated the separation of powers and an injunction barring them from simultaneously holding both positions. Respondents moved to dismiss, and the district court found NPRI lacked standing and granted respondents' omnibus motion to dismiss the same day it granted respondent the Nevada State Legislature's motion to intervene.

NPRI appealed, and this court reversed, expanding the public-importance exception to the standing doctrine to the narrow circumstance where "an appropriate party seeks to enforce a public official's compliance with Nevada's separation-of-powers clause (even if it does not involve an expenditure or appropriation), provided that the issue is likely to recur and there is a need for future guidance." *Nev. Pol'y Rsch. Inst., Inc. v. Cannizzaro*, 138 Nev. 259, 260, 507 P.3d 1203, 1206 (2022). We held that NPRI's challenge fell within that exception, reversed, and remanded.

On remand, respondents filed several motions to dismiss. Neal argued that dual employment pertains to only public officers and that public employees do not exercise the sovereign functions of state government that would bar dual employment. Ohrenschall argued that the separation of powers should not apply to employees of local government and that NPRI

---

[1]During the pendency of this litigation, Nevada State College changed its name to Nevada State University, without altering the institution's "functions, rights, powers, obligations or liabilities." 2023 Nev. Stat., ch. 277, §§ 5, 7, at 1840. The name change does not affect our analysis.

failed to join required parties. The Legislature argued that NPRI failed to invoke the conditional waiver of sovereign immunity and also failed to join all required parties. Miller and Torres joined the Legislature's motion as to these arguments, Neal's motion in full, and Ohrenschall's motion except Ohrenschall's argument regarding the classification of a deputy public defender under Nevada law. Neal joined the Legislature's motion. Ohrenschall joined Neal's motion and the Legislature's argument as to required parties. NPRI moved to strike the motions to dismiss and the joinders as successive to the motions to dismiss that preceded the initial remand.

The district court held a hearing and found no constitutional violation. The court concluded that whether dual employments violated the separation of powers turned on the common law doctrine of incompatible offices, whether a legislator's second employment was with a state or a local entity, and whether the employment was as a public employee or a public officer. The court determined that the employments of Miller, Torres, Neal, and Ohrenschall as public school teachers, a professor, and a public defender, respectively, were not incompatible with dual employment as legislators. The court further determined that the separation of powers did not apply to employment by local governmental entities, such as a county, so long as the dual positions were not incompatible. And finally, the court looked to the nature of the positions to determine that respondents' nonlegislator employments were as public employees rather than public officers. Finding no violation of the separation of powers, the district court accordingly granted the motions to dismiss and denied NPRI's motion to strike. NPRI appeals.

## DISCUSSION

NPRI contends that one may not maintain employment in two departments of state government, be they statewide or local. Respondents counter that the appropriate focus rests on whether the positions at issue exercise sovereign functions of state government and assert that the executive department positions challenged here do not. Reviewing both constitutional challenges and a dismissal for failure to state a claim de novo, *Callie v. Bowling*, 123 Nev. 181, 183, 160 P.3d 878, 879 (2007); *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008), we conclude that the Nevada Constitution bars a legislator from simultaneous service in another department of state government and that the separation of powers protected by the state constitution does not bar a legislator from employment with local government.

*The Nevada System of Higher Education is not organized within the executive department, and dual service within it and the Legislature does not violate the separation of powers*

NPRI argues that dual service in the executive and legislative departments flouts the separation of powers and is accordingly unconstitutional. Therefore, it argues, one may not serve as a legislator while maintaining employment with Nevada State College, which it argues is within the executive department. NPRI accordingly argues that the district court erred in dismissing its complaint for failing to state a claim. Respondents argue that the provision implicates state employees only where their positions involve the exercise of sovereign functions of state government. Respondents argue that it is well established that public employees do not exercise the sovereign functions generally exercised only by public officers.

*The separation of powers forbids simultaneous dual service in two departments of state government*

The Nevada Constitution provides that "[t]he powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution." Nev. Const. art. 3, § 1(1). The state constitution thus divides governmental power between and keeps separate the legislative, executive, and judicial departments. *Galloway v. Truesdell*, 83 Nev. 13, 19, 422 P.2d 237, 241 (1967). We have recognized that "[t]he division of powers is probably the most important single principle of government declaring and guaranteeing the liberties of the people." *Id.* at 18, 422 P.2d at 241.

Generally, the legislative power vested in the Legislature is the "authority to enact, amend, and repeal laws"; the executive power vested in the Governor is "to carry out and enforce those laws"; and the judicial power vested in the state courts is "to hear and determine justiciable controversies." *Halverson v. Hardcastle*, 123 Nev. 245, 260, 163 P.3d 428, 439 (2007) (internal quotation marks omitted). Moreover, each department's functions encompass the inherent authority to perform its duties and administer its affairs. *Id.* at 261, 163 P.3d at 439; *see Blackjack Bonding v. City of Las Vegas Mun. Ct.*, 116 Nev. 1213, 1219, 14 P.3d 1275, 1279 (2000) ("[W]hen a constitution or statute gives a general power, it also grants by implication every particular power necessary for the exercise of that power."). One exercising these sovereign functions of a given department is a public officer, as distinguished from a public employee. *Eads v. City of Boulder City*, 94 Nev. 735, 737, 587 P.2d 39, 40-41 (1978).

In this regard, for instance, "[a] judicial function is the exercise of judicial authority to hear and determine questions in controversy that are proper to be examined in a court of justice," and the constitutional judicial power includes incidental powers related to and derived from the basic functions characteristic of the judicial department. *Galloway*, 83 Nev. at 20, 422 P.2d at 242. Additionally, each department's powers also incorporate ministerial functions necessary for its operation, to "put into effect the basic function of each Department." *Id.* at 21, 422 P.2d at 243.

The mandated separation of the executive, legislative, and judicial departments affirms "[t]he fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others." *Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935). In such a sense, each department must strive "to prevent such prohibited encroachments lest our fundamental system of governmental division of powers be eroded." *Galloway*, 83 Nev. at 22, 422 P.2d at 243. Being subject to two masters creates a risk of coercive influence between departments that would violate *Galloway*'s directive to prevent even the slightest encroachment in this regard and *Humphrey's Executor*'s caution against the risk of even indirect coercive influence from another department.

*Nevada State College is not organized within one of the three departments of state government, and therefore dual employment with that institution and the Legislature does not violate the separation of powers*

Having determined that dual service in two departments of state government offends the separation of powers and thus violates the Nevada Constitution, we turn to NPRI's contention that service as a legislator while employed with a Nevada System of Higher Education (NSHE) university violates this proscription. In light of the constitutional

foundations and authorization of the NSHE, we disagree with NPRI. We hold that NSHE institutions do not exercise the type of constitutional power that, pursuant to the separation of powers, must be separated from and protected from either encroaching on or being encroached on by the constitutional powers delegated to the three departments of state government.[2]

Article 11 of the Nevada Constitution guides our determination of the location of the NSHE within state government. It provides that "[t]he Legislature shall provide for the establishment of a State University . . . to be controlled by a Board of Regents whose duties shall be prescribed by Law." Nev. Const. art. 11, § 4. The Legislature so established the NSHE in NRS Chapter 396. The control constitutionally vested in the Board of Regents to oversee the NSHE "is exclusive of such right in any other department of the government save only the right of the legislature to prescribe duties and other well recognized legislative rights not here in question." *King v. Bd. of Regents of Univ. of Nev.*, 65 Nev. 533, 564-65, 200 P.2d 221, 236 (1948). The Legislature has a limited role as to the Board, and thus the NSHE is not part of the legislative department. *See Bd. of Regents of Univ. of Nev. Sys. v. Oakley*, 97 Nev. 605, 608, 637 P.2d 1199, 1200 (1981) (providing that the Legislature may not invade the Board's power through legislation interfering with its essential functions). While the Governor had a constitutional role as a member of the first Board until an election could be held for a new Board of Regents, Nev. Const. art. 11,

---

[2]Given that Neal raised the issue of NSHE's constitutional status in supplemental briefing below and that the other parties had the opportunity to address this issue, we disagree with our colleague Justice Pickering that this matter was not properly raised or briefed.

 

§ 7, article 11 otherwise does not mention the Governor or the executive department, and we have rejected the proposition that the Board was part of the executive department such that the Board's actions elude judicial review, *State ex rel. Richardson v. Bd. of Regents of Univ. of Nev.*, 70 Nev. 144, 147, 261 P.2d 515, 516 (1953). And article 11 provides no suggestion that either the Board or the NSHE is organized within the judicial department. Further, the Legislature indicated its understanding that the NSHE is not part of the judicial, legislative, or executive departments because it established the NSHE in NRS Chapter 396, which is within Title 34 of the Nevada Revised Statutes, regulating "Education." NSHE is not organized within Titles 1, 17, or 18, which regulate the "State Judicial Department," "State Legislative Department," and "State Executive Department," respectively.[3] *Cf. State v. Javier C.*, 128 Nev. 536, 540, 289

---

[3]We disagree with our colleague Justice Pickering that NSHE must be organized within the executive department because it is a state entity not within the legislative or judicial departments. No authority has been provided to support that proposition. Moreover, *Oakley* does not reject that NSHE has a unique constitutional status. Rather, *Oakley* rejected that the Board of Regents was immune from state nondiscrimination policy on that theory—it did not reject that NSHE had a unique constitutional status. 97 Nev. at 607-08, 637 P.2d at 1200. Indeed, it went further and impliedly endorsed that theory by accompanying its description of the Board's claim with a citation to the unique constitutional provision setting forth the Board's authority. *Id.* at 607 & n.2, 637 P.2d at 1200 & n.2. And while the separate opinion lists a variety of foreign opinions in support of its conclusion, it does not engage with the construction of California's analogous constitutional provisions regarding education, which this court has looked to for guidance in interpreting article 11. *Shea v. State*, 138 Nev. 346, 352-53, 510 P.3d 148, 153-54 (2022). In contrast, the California Board of Regents constitutes "a branch of the state itself or a statewide administrative agency" with "virtual autonomy in self-governance" due to its constitutional basis. *Campbell v. Regents of Univ. of Cal.*, 106 P.3d 976,

P.3d 1194, 1196 (2012) (looking to the Title of the Nevada Revised Statutes in determining the scope of statutes in applying them).

We conclude that the Board of Regents has an independent constitutional authorization and constitutional power discrete from the other departments of state government and the Board is protected from otherwise empowered constitutional actors improperly intruding into its essential functions. Further, neither Nevada's constitution nor its statutes suggest the Board of Regents' incorporation within a department of state government. And therefore, we conclude that the NSHE is not within the executive department.

As the Nevada State College is a college within the NSHE, NRS 396.005(3), we conclude that Neal's dual service as an employee of Nevada State College and as a member of the Nevada Assembly does not violate the separation of powers. While the district court found no constitutional concern with Neal's dual service because the positions were not incompatible, it applied the incorrect standard but nevertheless reached the correct outcome, and we affirm its determination that Neal's dual employment does not violate the separation of powers. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) ("This court will affirm a district court's order if the district court reached the correct result, even if for the wrong reason.").

And we disagree with our dissenting colleagues that further factual development below is necessary. The appeal presents a suitable instance where we may assume NPRI's factual allegations for the purpose of reviewing the legal merit of its claims, and we have done so. *Cf. Buzz*

982 (Cal. 2005) (citation and internal quotation marks omitted). It is not controlled by or organized within the executive department.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Stew*, 124 Nev. at 228, 181 P.3d at 672. Additional factual development would not aid that analysis. Relatedly, we find the proposition that every employment must be factually scrutinized to interrogate the functions it exercises rather than the department in which it is situated unpersuasive. Our construction here accords with the approach taken by sister state supreme courts, *e.g.*, *State ex rel. Black v. Burch*, 80 N.E.2d 294, 296-99, 301 (Ind. 1948); *Saint v. Allen*, 126 So. 548, 555 (La. 1930); *State ex rel. Spire v. Conway*, 472 N.W.2d 403, 412-13 (Neb. 1991), as well as with the view generally taken by the Nevada Attorney General, 1954-357 Op. Att'y Gen. 93 (1954); 1974-168 Op. Att'y Gen. 27, 32-33 (1974); 2004-03 Op. Att'y Gen. 17, 43 (2004); *but see* 1955-59 Op. Att'y Gen. 93 (1955) (concluding that a school district employee could not serve as a state legislator but failing to support this determination with legal authority). This court has embraced a 1974 Attorney General opinion which concluded that "because a Highway Patrol Trooper is a member of the executive branch of government, it would be 'constitutionally invalid for an employee of the patrol to simultaneously serve as a member of the state legislative or judicial departments.'" *Whitehead v. Nev. Comm'n on Jud. Discipline*, 110 Nev. 874, 880 n.6, 878 P.2d 913, 917 n.6 (1994) (quoting 1974-168 Op. Att'y Gen. 27, 33 (1974)). Moreover, we find the practical consequences of such an approach concerning. Each instance of dual public employment would invite a challenge, and each ruling would be tightly bound to that specific instance. This would yield an impractical rule that would provide little guidance and would subject dual public employees to a risk of harassment and the considerable time and expense of potentially frivolous litigation.

*The separation of powers does not bar a member of one department from simultaneous employment in local government*

NPRI argues that local government officials are part of the executive department insofar as they carry out the laws of the state. It thus argues that respondents may not serve in the Legislature while employed in various positions by the Clark County Public Defender, the Clark County School District, and a Clark County public charter school.[4] Respondents counter that the separation of powers does not bar a legislator from employment with local government.

We conclude that the separation of powers does not bar Clark County employees such as the public school teachers and deputy public defender before the court here from service in the Legislature. Local government employees are distinguishable from employees of a state government department for separation-of-powers purposes, and local executive department employees are not within the state executive department.

To reach this conclusion, we begin with the Nevada Constitution. Nevada relied on California's constitution in drafting its own, and we have looked to California decisions interpreting analogous provisions and presumed the same construction was intended. *State ex rel. Harvey v. Second Jud. Dist. Ct.*, 117 Nev. 754, 763, 32 P.3d 1263, 1269 (2001). This presumption warrants particular weight here, where Nevada

___

[4]NPRI originally challenged the dual employments of several other individuals, including two deputy district attorneys who are no longer parties here. Whether a district attorney's simultaneous dual service in the Legislature violates the separation of powers, however, is not presented in this case, given the current parties to this appeal, and we limit our consideration to the issue of dual employment pertaining to the current respondents.

framers used language nearly identical to California's in enacting the separation-of-powers provision. *Compare* Nev. Const. art. 3, § 1(1) (as adopted 1864) (amended 1993 and 1995) ("The powers of the Government of the State of Nevada shall be divided into three separate departments— the Legislative, the Executive, and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted."), *with* Cal. Const. of 1849 art. 3 (superseded 1879) ("The powers of the Government of the State of California shall be divided into three separate departments: the Legislative, the Executive and Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases hereinafter expressly directed or permitted."). The California Supreme Court explained that the California Constitution created and empowered the three departments of state government and the separation of powers referred to those departments and their authorities, specifically protecting their distinctive powers. *People ex rel. Att'y Gen. v. Provines*, 34 Cal. 520, 532-33 (1868); *see also County of Mariposa v. Merced Irrigation Dist.*, 196 P.2d 920, 926 (Cal. 1948) ("[I]t is settled that the separation of powers provision of the constitution, art. 3, § 1, does not apply to local governments as distinguished from departments of the state government."). The court distinguished these state governmental powers from those established for local governments subsequently created by legislative enactment and held that the separation of powers governing the state did not apply to local governments. *Provines*, 34 Cal. at 533-34. Other state high courts have ruled similarly. *E.g.*, *Ghent v. Zoning Comm'n of City of Waterbury*, 600

A.2d 1010, 1012 (Conn. 1991) ("The constitutional [separation-of-powers] provision applies to the state and not to municipalities, which are governed by charters and other statutes enacted by the legislature."); *Tendler v. Thompson*, 352 S.E.2d 388, 388 (Ga. 1987) ("The doctrine of separation of powers applies only to the state and not to municipalities or to county governments."); *LaGuardia v. Smith*, 41 N.E.2d 153, 156 (N.Y. 1942) (concluding that "the theory of co-ordinate, independent branches of government has been generally held to apply to the national system and to the states but not to the government of cities" and collecting cases in support).

The Nevada Constitution created and empowered the legislative, executive, and judicial departments. *See generally* Nev. Const. arts. 4-6. It did not specifically create local governments but provided that "[t]he Legislature shall establish a system of County and Township Government which shall be uniform throughout the State." *Id.* art. 4, § 25; *see also id.* art. 8, § 8 ("The legislature shall provide for the organization of cities and towns by general laws . . . ."). Consistent with *Provines'* construction of California's analogous provision, 34 Cal. at 532; *see* Cal. Const. of 1849 art. 11, § 4 ("The Legislature shall establish a system of county and town governments, which shall be as nearly uniform as practicable, throughout the State."), local government employees are distinguishable from employees of a state government department for separation-of-powers purposes, and local executive department employees are not within the state executive department. We therefore affirm the district court's determination that the separation of powers does not proscribe Miller's employment with the Clark County School District, Torres' employment with a Clark County public charter school, and

Ohrenschall's employment with the Clark County Public Defender's Office while each simultaneously serves in the Nevada Legislature.[5]

*The separation of powers is not limited to circumstances where both positions are public offices*

Respondents argue that the separation of powers implicates dual employment only where each position exercises sovereign authority, that is, specific legislative, executive, or judicial powers exercised as a public officer, relying on *State ex rel. Mathews v. Murray*, 70 Nev. 116, 258 P.2d 982 (1953). In this capacity, they distinguish public offices from public employment. We disagree that the protections afforded by the separation of powers are narrowed in this way and observe that *Murray* is distinguishable.

---

[5]NPRI's reliance on *Harris Associates v. Clark County School District*, 119 Nev. 638, 81 P.3d 532 (2003), and *Commission on Ethics v. Hardy*, 125 Nev. 285, 212 P.3d 1098 (2009), to argue the contrary is misplaced. *Harris Associates* recognized that a school district is "a political subdivision of the state" by virtue of its creation by statute. 119 Nev. at 645, 81 P.3d at 537. The decision does not analyze the separation of powers or contemplate whether a school district operates within a department of state government. *Provines* is again instructive: A county school district falls beyond the constitutional separation of powers between state government departments because the state constitution does not create local government but requires the Legislature to do so, just as the Nevada Constitution requires the Legislature to enact school systems. *See* Nev. Const. art. 11, § 2; *Provines*, 34 Cal. at 532-33. And *Hardy* does not support the proposition that local entities are part of the executive department. 125 Nev. at 298, 212 P.3d at 1107-08. *Hardy* held that the state administrative agency at issue was part of the executive department notwithstanding being the product of statutory enactment. *Id.* at 298, 212 P.3d at 1108. It did not, however, address local government, let alone entail that local subdivisions are part of the state executive department simply because they are the product of legislative enactments.

*Murray* provides that quo warranto actions may lie for challenges to the holding of public office, as distinguished from public employment. 70 Nev. at 120, 258 P.2d at 983-84; *see id.* at 120-24, 258 P.2d at 984-85 (determining what constitutes a public office and concluding that the director of the drivers license division was not a public office). It implies without stating that the separation of powers bars only public offices but includes no reasoning supporting that implication, which rests only on its proposition regarding the scope of quo warranto actions. *Id.* at 120-21, 258 P.2d at 983-84. We therefore conclude that *Murray* does not stand for the proposition that dual service violates the separation of powers only where both positions constitute public offices. *Murray* directs when quo warranto relief for violating the separation of powers may be appropriate but is not the only guide as to whether dual service violates the separation of powers.

This court clarified the matter in *Heller v. Legislature of State of Nev.*, which notes that quo warranto "is the appropriate vehicle by which to challenge a legislator's title to *public office*." 120 Nev. 456, 459, 93 P.3d 746, 748 (2004) (emphasis added); *cf. Clark County v. Eliason*, 136 Nev. 429, 433 n.9, 468 P.3d 817, 820 n.9 (2020) ("In *Heller*, our discussion of *quo warranto* actions was dicta, as we had already concluded that a lack of standing resolved that case."). While a dual-employment challenge against a public officer might be brought by a quo warranto action, *Heller* also surmises that such a challenge against other public employees may be brought through a request for declaratory and injunctive relief. 120 Nev. at 472, 93 P.3d at 757. Such an action would be pursued against the individual legislator whose dual employment was at issue. *Id.* at 472-73, 93 P.3d at 757.

SUPREME COURT
OF
NEVADA

(O) 1947A

Consistent with *Heller*'s guidance, we clarify that *Murphy* describes how and when quo warranto relief may be sought in challenging a dual public officeholder but *Murray* does not provide that the separation of powers clause does not apply to a public officer who is also a public employee. When the employments are not both public offices, a claimant may still assert, as NPRI does here, a violation of the separation of powers and seek a declaratory judgment and an injunction.

*Remaining issues*

NPRI also argues that the district court should have stricken respondents' motions to dismiss as successive. Respondents observe that the matter was before the district court on remand after this court reversed the district court's determination that NPRI lacked standing. Therefore, they argue, their motions were not successive, and they were free to seek dismissal on the merits. NPRI has offered no authority showing an entitlement to NRCP 12(g)(2) relief in circumstances such as the present, and we are aware of none. NRCP 12(g)(2) limits successive motions to dismiss where the movant seeks to assert claims that could have been raised in the original motion but were not. It does not bar a subsequent motion to dismiss where a district court granted dismissal on a jurisdictional issue without considering the merits and an appellate court reversed the dismissal and remanded the matter for additional proceedings. *See Crestmont Cleveland P'ship v. Ohio Dep't of Health*, 746 N.E.2d 222, 226 (Ohio Ct. App. 2000) (concluding Ohio's analogous rule did not bar a second motion to dismiss where the district court dismissed for mootness without resolving a first motion to dismiss on the merits and the appellate court reversed and remanded). Further, the purpose of NRCP 12(g) is to prevent unnecessary delay. *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice & Procedure: Civil* § 1384 (3d ed. 2024) (interpreting federal analog to NRCP 12(g)). The record indicates that respondents raised their arguments that the separation of powers did not bar their dual employments in the first motion to dismiss. It would be an absurd outcome to prevent the district court from considering the merits on a renewed motion after it dismissed for a lack of standing. A motion seeking dismissal on the merits after a dismissal for want of standing was reversed is not dilatory and is not subject to being stricken under NRCP 12(g)(2). We conclude that NPRI has not shown that relief is warranted on this basis.

NPRI also argues that the district court violated the principle of party presentation in basing its decision on the common law doctrine of incompatible offices, asserting that the parties did not brief that issue. The principle of party presentation sets forth that courts rely on the parties to frame the issues of a given matter. *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). The district court, however "may consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (internal quotation marks omitted). "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). In short, a district court does not reversibly err because it applies a legal rule that it concludes disposes of the issues before it.[6] Doing

---

[6]Notwithstanding that the principle of party presentation does not render the district court's reliance on incompatible offices reversible, this court has not previously concluded that the doctrine of incompatible offices

SUPREME COURT
OF
NEVADA

(O) 1947A

so does not violate the principle of party presentation. *Cf. Sineneng-Smith*, 590 U.S. at 376, 380 (recognizing that the "party presentation principle is supple, not ironclad" and that "a court is not hidebound by the precise arguments of counsel"). We conclude that NPRI has not shown that relief is warranted in this regard.

The Legislature also argues that dismissal was required because NPRI neglected to comply with statutory provisions for waiving sovereign immunity and failed to join necessary parties.[7] Sovereign immunity "concerns immunity from suit to establish state liability or control state action." *Prudential Ins. Co. of Am. v. Ins. Comm'r*, 82 Nev. 1, 5, 409 P.2d 248, 250-51 (1966). The Legislature has not shown that either

resolves a dual-public-employment challenge, and we do not do so now. While our colleague Justice Herndon contends that the district court strayed from the dual-employment challenge the parties presented in applying this doctrine, we disagree in determining that the district court mistakenly relied on a doctrine that does not control to resolve this particular challenge. As we discuss here, dual public service violates the separation of powers where a public officer maintains employment in another department, regardless of whether the second public employment is compatible with the public office. To the extent that the district court reached the correct outcome, we need not upset its disposition, as we have stated.

[7]NPRI argues that we should not consider the Legislature's sovereign immunity and joinder claims because the Legislature did not file a cross-appeal. The Legislature raised these issues below, and the district court addressed them in its disposition order, which was designated in the notice of appeal. As "[a] respondent may, . . . without cross-appealing, advance any argument in support of the judgment even if the district court rejected or did not consider the argument," *Ford v. Showboat Operating Co.*, 110 Nev. 752, 755, 877 P.2d 546, 548 (1994), we may consider the Legislature's alternative arguments to uphold the district court's disposition. Insofar as NPRI argues that the Legislature seeks additional relief, the Legislature's brief belies that contention.

state liability or state action are involved here, and this court has recognized that a challenge to a government employee's dual service in two departments of government may be challenged by an action against the employee for quo warranto or injunctive and declaratory relief. *See Heller*, 120 Nev. at 472, 93 P.3d at 757 (dicta); *see also State ex rel. Stratton v. Roswell Indep. Sch.*, 806 P.2d 1085, 1091 (N.M. 1991) (determining that the scope of sovereign immunity protection presented "quite a different question from" whether dual public employment violated the separation of powers); *cf. Alden v. Maine*, 527 U.S. 706, 757 (1999) ("The [sovereign immunity] rule, however, does not bar certain actions against state officers for injunctive or declaratory relief."). The Legislature has not shown that dismissal was required on this basis.

Lastly, the Legislature argues that NPRI failed to join all necessary parties, highlighting specifically several judges who also hold roles as adjunct professors at state universities and would potentially be affected by the litigation. The Legislature argues both that relief cannot be afforded among those already parties and that the proceeding would impair the employment interests of other dual holders, relying on NRCP 19(a)(1)(A) and (B). NRCP 19(a)(1) generally requires joinder of nonparties (A) without whom complete relief cannot be afforded to existing parties or (B) who have an interest in the action such that a disposition in their absence either (i) impairs the nonparty's ability to protect the interest or (ii) creates a risk of subjecting the nonparty to multiple or inconsistent obligations. Neither NRCP 19(a)(1)(A) or (B) apply here for three reasons.

First, the district court was able to assess the constitutionality of the dual employment of respondent legislators without joining other individuals serving dual public employments. *See United States v. Nye*

*County*, 951 F. Supp. 1502, 1513 (D. Nev. 1996) ("The focus under a Rule 19(a)(1) analysis is complete relief among those already parties, not between the parties and the absent person whose joinder is sought." (interpreting analogous federal rule)). Thus, NRCP 19(a)(1)(A) is not at issue.

Second, although an absentee with "an interest relating to the subject of the action" must be joined if the nonparty's absence will prejudice the nonparty's ability to protect that interest, NRCP 19(a)(1)(B)(i) is not implicated where the matter falls within the public interest exception to Rule 19. When a proceeding seeks to vindicate a public right, nonparties who may be harmed by the disposition are not indispensable parties. *See Nat'l Licorice Co. v. Nat'l Lab. Rels. Bd.*, 309 U.S. 350, 362-63 (1940). While the scope of this exception has not been precisely defined, it generally applies when issues of public concern are litigated and joinder would be required of many parties. *Kickapoo Tribe of Indians of Kickapoo Rsrv. in Kan. v. Babbitt*, 43 F.3d 1491, 1500 (D.C. Cir. 1995); *see Kescoli v. Babbitt*, 101 F.3d 1304, 1311 (9th Cir. 1996) (recognizing that litigation may adversely affect nonparties without requiring their joinder but may not "destroy [their] legal entitlements" (internal quotation marks omitted)). Here, the matter concerns public rights, given that we have concluded that the constitutionality of dual employment here involves the possibility of a public injury of significant public importance. *Nev. Pol'y Rsch. Inst., Inc. v. Cannizzaro*, 138 Nev. 259, 264, 507 P.3d 1203, 1209 (2022). While the number of nonparties who would be joined is not large, the disposition binds only the current parties, and a potential adverse effect does not render a nonparty necessary to a case involving public rights. *See Kirkland v. N.Y. State Dep't of Corr. Servs.*, 520 F.2d 420, 424 (2d Cir. 1975) ("When litigation

Supreme Court
of
Nevada

(O) 1947A

22

seeks the vindication of a public right, third persons who may be adversely affected by a decision favorable to the plaintiff do not thereby become indispensable parties."). We conclude that the possibility of being harmed by the disposition here did not, pursuant to NRCP 19(a)(1)(B)(i), render the nonparties required to be joined in NPRI's public rights action.

And third, it is evident that the litigation did not "create[ ] a risk of subjecting [a] nonparty to multiple or inconsistent obligations." *See* NRCP 19(a)(1)(B)(ii). We therefore conclude that the Legislature has not shown that relief is warranted on this basis.

## *CONCLUSION*

We determine that the separation of powers does not tolerate dual service within the executive and legislative departments of state government. While respondents are members of the Nevada Legislature, they are not also employed within the executive department and do not exercise the constitutional authority of the executive department in the other positions they occupy. Respondent legislators therefore do not violate article 1, section 3 of the Nevada Constitution because of their dual employments. The NSHE is organized outside the executive department, and thus employment as a professor with Nevada State College, an entity within the NSHE, is not within the executive department. Employments as a deputy public defender or as public school teachers with Clark County neither exercise the constitutional power of the executive department nor are located within it. While the district court erred in training its focus on the common law doctrine of incompatible offices and whether respondents' positions constituted public office rather than public employment, it

nevertheless correctly determined that NPRI's challenge did not identify a violation of the separation of powers, and we affirm.

_____, J.
Stiglich

We concur:

_____, C.J.
Cadish

_____, J.
Parraguirre

_____, J.
Bell

HERNDON, J., concurring in part and dissenting in part:

I concur with the majority that (1) the district court did not err in taking up the motion to dismiss, as it was not successive; (2) sovereign immunity did not require dismissal; and (3) the Legislature is not entitled to relief based on appellant Nevada Policy Research Institute's (NPRI) failure to join all necessary parties. Despite my concurrence regarding these ancillary issues, I disagree with the majority's conclusion that the district court did not violate the principle of party presentation. I also disagree—both procedurally and substantively—with the majority's handling of the separation-of-powers issue. For the reasons more fully discussed below, I would reverse based on these issues and thus respectfully dissent.

*The principle of party presentation*

In 2022, we reversed and remanded the district court's dismissal of this case, concluding that NPRI had standing under the public-importance exception to pursue the "enforcement of *the separation-of-powers clause* as applied to public officials" and recognizing NPRI's "ability to vigorously litigate this important, recurring issue." *Nev. Pol'y Rsch. Inst., Inc. v. Cannizzaro*, 138 Nev. 259, 267, 507 P.3d 1203, 1211 (2022) (emphasis added). As the neutral arbiter of the dispute, the district court should have decided the exact issue this court conferred standing on NPRI to litigate. Unfortunately, the district court did not do so. I conclude that the district court erred in discarding the parties' legal arguments and instead applying the common law doctrine of incompatible offices. In my view, this conversion of the issue constitutes reversible error based on a violation of the principle of party presentation.

The underlying case involves respondents—Brittney Miller (an employee of the Clark County School District), Dina Neal (an employee of

Nevada State College and the College of Southern Nevada), James Ohrenschall (an employee of the Clark County Public Defender), and Selena Torres (an employee of a Clark County public charter school)—who engage in dual service as state legislators and government employees in their respective roles. The question put to the district court was straightforward—whether the individual respondents' dual service violates the separation-of-powers clause of the Nevada Constitution. Nev. Const. art. 3, § 1(1).

"In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008), *cited with approval in State v. Eighth Jud. Dist. Ct. (Doane)*, 138 Nev., Adv. Op. 90, 521 P.3d 1215, 1221 (2022). Under the party-presentation principle, courts "rely on the parties to frame the issues for decision" and "courts [assume] the role of neutral arbiter of matters the parties present." *Id.* Accordingly, "[judges] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do, we normally decide *only questions presented by the parties.* Counsel almost always know a great deal more about their cases than we do . . . ." *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc) (emphasis added).

This principle is not new and aligns with the duties constitutionally vested in the judicial department. *See* Nev. Const. art. 6, § 1; *Judge, Black's Law Dictionary* (12th ed. 2024) (defining "judge" as "[a] public official appointed or elected *to hear and decide legal matters* in court" (emphasis added)). Nor is this principle unique to trial courts. As the United States Supreme Court explained, "[t]he premise of our adversarial

 

system is that appellate courts do not sit as self-directed boards of legal inquiry and research." *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)).

Consistent with the party-presentation principle, this court generally declines to consider issues not raised below. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981). Likewise, we have also explained that "[p]arties may not raise a new theory for the first time on appeal, which is inconsistent with or different from the one raised below." *Schuck v. Signature Flight Support of Nev., Inc.*, 126 Nev. 434, 437, 245 P.3d 542, 544 (2010) (internal quotation marks omitted). Moreover, we often decline to address issues presented without cogent argument or relevant authority. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (observing it is appellant's "responsibility to cogently argue, and present relevant authority, in support of his appellate concerns"). In other words, "[w]e will not supply an argument on a party's behalf but review only the issues the parties present." *Senjab v. Alhulaibi*, 137 Nev. 632, 633-34, 497 P.3d 618, 619 (2021). I believe we should hold the district court here to the same principles.

When NPRI initiated this case, it presented a specific issue regarding dual service and the separation-of-powers clause. When respondents filed motions to dismiss, they did not seek in any way to reframe the issue regarding the separation-of-powers-clause allegations. NPRI's responsive pleading focused as well solely on the separation-of-powers-clause allegations. At the hearing on respondents' motions to dismiss, NRPI stated clearly, "[T]his case involves one all important issue, whether the [respondents] are engaging in dual employment in the Executive Branch while serving as elected legislators and *whether that*

 

*violates the separation of powers clause. That is the question.*" After full briefing and argument on this clearly and expressly identified issue, the district court announced that it was inclined to deny the motions to dismiss, but it wanted "to go back and relook at everything again." Instead of resolving the issue presented, the district court addressed an entirely different issue—whether dual service violated the common law doctrine of incompatible offices. *See Common Law, Black's Law Dictionary* (12th ed. 2024) (defining "common law" as "[t]he body of law derived from judicial decisions, rather than from statutes *or constitutions*" (emphasis added)).

Notably, in the event the district court found persuasive authority on the issues outside the briefing and argument, NPRI expressly asked for an opportunity to be notified and permitted to provide supplemental briefing. Requesting supplemental briefing is a prudent step that courts may take when confronted with novel or unique legal issues. *See, e.g., Washoe Cnty. Sheriff's Dep't v. Hunt*, 109 Nev. 823, 825, 858 P.2d 46, 48 (1993) (noting that this court requested supplemental briefing on a specific question that arose at oral argument); *see also* NRAP 28(j) (amended 2024) (providing that parties may advise this court of supplemental authority that a party identifies after the party's brief has been filed). Indeed, even respondents conceded at oral argument that it "would have been preferable" for the district court to notify the parties about its consideration of a common law doctrine. Thus, the district court could have requested supplemental briefing, which may have elucidated that "training its focus on the common law doctrine of incompatible offices and whether respondents' positions constituted public office rather than public employment" was erroneous. Majority op. at 23. But that is not what occurred here.

In this case, the majority attempts to justify its conclusion that there was no violation of the party-presentation principle by suggesting that the district court merely applied a dispositive legal rule. However, the district court did not just do that. Despite the parties clearly defining the issue for it, the district court reframed the issue, did not alert the parties it was doing so until rendering its decision, and did not allow any input from them. Additionally, the majority certainly does not view the district court's application of the common law doctrine of incompatible offices as dispositive. Instead, the majority states that the doctrine of incompatible offices is not dispositive to the constitutional issue presented. On this, we agree.

The majority also seems to suggest that the district court only "consider[ed] an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." Majority op. at 19 (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993)). The majority, however, does not explain how the common law doctrine of incompatible offices resolved an issue antecedent to the *constitutional issue* that the parties briefed and argued. And, as stated above, the doctrine was not dispositive to that issue. Nor is this a case where the district court exercised "the independent power to identify and apply the proper construction of governing law." Majority op. at 19 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)). Here, the parties did not omit or fail to identify the proper legal framework, the district court did.

In reaching its conclusion, the majority correctly notes that the principle of party presentation is "supple" and that courts are not "hidebound" to the exact arguments presented. Majority op. at 20 (quoting

*United States v. Sineneng-Smith*, 590 U.S. 371, 376, 380 (2020)). Obviously, courts are not strictly constrained to the authority and analysis presented by the parties when deciding an issue that the parties have addressed. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (recognizing that it is "the responsibility of appellate courts to decide cases in accordance with law, and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities" (internal quotation marks omitted)). Courts cannot be so constrained, as they must decide cases according to established law. *See In re MacDonnell's Estate*, 56 Nev. 346, 350, 53 P.2d 625, 626 (1936) (recognizing that "[n]o principle is more widely recognized than that a rule of law long established and repeatedly sanctioned will be adhered to by the courts"), *reh'g granted*, 56 Nev. 504, 55 P.2d 834 (1936). But I believe courts cannot completely disregard the framing of issues and arguments of the parties and convert the issue to one of their own accord. Even applying the party-presentation principle leniently, the district court did not merely address a threshold issue or sua sponte apply a dispositive legal principle. Rather, the district court converted the very issue and framework of what NPRI alleged in its complaint.

The majority acknowledges that the district court erred in its application of the incompatibility-of-offices doctrine but proffers a "right result/wrong reason" decision. As discussed above, I disagree with this procedural approach and would remand the matter to the district court to decide the separation-of-powers issue in the first instance. *See Mason v. Fakhimi*, 109 Nev. 1153, 1158, 865 P.2d 333, 336 (1993) (observing "that this court may decline to decide an issue that was not fully litigated or decided by the district court"). Moreover, deciding the separation-of-powers

 

issue is unnecessary to addressing whether NPRI's allegations survive a motion to dismiss under NRCP 12(b)(5). *See Vacation Vill., Inc. v. Hitachi Am., Ltd.*, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994) ("On appeal from an order granting an NRCP 12(b)(5) motion to dismiss, *the sole issue presented is whether a complaint states a claim for relief.*" (cleaned up) (emphasis added)); *White v. Warden*, 96 Nev. 634, 637 n.1, 614 P.2d 536, 537 n.1 (1980) ("This court will avoid consideration of constitutional questions when such consideration is unnecessary to the determination of an appeal."). Either way, substantive review by this court is premature.

Had the district court decided the constitutional issue that NPRI has raised, it would be due for appellate review. But, in my view, the district court's conversion of the issue violated the principle of party presentation and improperly decided the issue without the benefit of adversarial briefing and argument. In violating the principle of party presentation, the district court did what this court generally does not—address an issue not raised or argued by the parties. I believe that the district court's conversion of the issue constitutes reversable error. *See, e.g., Sineneng-Smith*, 590 U.S. at 375 (holding that the appellate court "departed so drastically from the principle of party presentation as to constitute an abuse of discretion"). Accordingly, I would reverse the district court's order granting respondents' motions to dismiss and remand the case for the district court to properly address the claim raised, i.e., the separation-of-powers issue.

*The separation-of-powers issue*

Moving on to the substance of the issue, I believe the majority errs by basing its ruling on secondary sources of authority to the detriment of the text of the Nevada Constitution, article 3, section 1(1). Fidelity to the language employed by the framers in drafting the Constitution is the

paramount concern in constitutional interpretation, especially where the provision is unambiguous. In lieu of textual analysis, the majority tethers itself to strings of caselaw pulled across decades of jurisprudence. A light tug on any of the strings unravels the majority's reasoning because the majority does not connect its conclusions of law to the legal standards we must apply at the dismissal stage of a lawsuit. It finds the possibility of a constitutional violation against any of the individual respondents impossible based on a nonexistent factual record. In any other context, this court would either remand the case to proceed with discovery and develop the record for summary judgment (testing NPRI's allegations through the evidentiary process) or describe the deficiencies in NPRI's complaint that render its allegations impossible. The majority does not justify why this case is unique. As the majority elides the Constitution's text, it abdicates its duty to protect the constitutional principle of division of powers.

"The rules of statutory construction apply when interpreting a constitutional provision," and we "will look to the plain language of a provision if it is unambiguous." *Schwartz v. Lopez*, 132 Nev. 732, 745, 382 P.3d 886, 895 (2016). We must also read the Constitution "as a whole, so as to give effect to and harmonize each provision." *Nevadans for Nev. v. Beers*, 122 Nev. 930, 944, 142 P.3d 339, 348 (2006). The Nevada Constitution states:

> The powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

 

Nev. Const. art. 3, § 1(1). The first half of the clause, before the semicolon, describes the procedure for Nevada's distribution of powers. It divides the government into three separate departments. Its terms are unambiguous, so we have no reason to venture beyond the plain language. *Lopez*, 132 Nev. at 745, 382 P.3d at 895. Divided means separated, and this concept of separation is reiterated to introduce the three branches: the Legislative, the Executive, and the Judicial. We give meaning to the phrase that the powers "shall be divided" by embracing the principle so fundamental to the distribution of powers that it was emphasized twice in five words: separation. There are three, and only three, departments of State government. And they must be separate.

The second half of the clause describes *how* the departments shall be divided. It is less linguistically precise than the first half, with its negative phrasing and consecutive dependent phrases. Nonetheless, the second clause remains constrained by the first: the idea of "separate departments" must guide the reader in harmonizing the meaning of the two halves. "No persons charged with the exercise of powers properly belonging to one of these departments" describes the legislator-respondents. "[S]hall exercise any functions, appertaining to either of the others," describes the performance of a function appertaining to either the Executive or the Judicial branches. It uses "appertaining," a broad word meaning "relates to, or concerning."[1] It uses the word "any" in modifying the word "functions"

---

[1]"Appertaining" had the same meaning at the time that the Nevada Constitution was drafted: "[t]o belong or relate, whether by right, nature, appointment, or custom." *Appertain, Webster's Complete Dictionary of the English Language* (1864).

to emphasize that an improvidently exercised function, however seemingly minute or trivial, could infringe upon the principle at play.

We must interpret the two halves of the clause in a manner that harmonizes them into a whole. We do so by effectuating a broad view of what it means for any function to appertain, with a strict emphasis on the division of powers between the three departments. In practice, the constitutional inquiry follows the text in straightforward fashion. A trier of fact must (1) evaluate whether a person is charged with the exercise of power belonging to one branch and then (2) determine, based on evidence properly presented to the court, whether that person also exercises any functions appertaining to either of the others.[2]

I use the term "trier of fact" because NPRI's claim should be tested through the litigation process the same as any other case, including at the sufficiency of its pleadings. To survive a motion to dismiss, NPRI must simply state a claim under which relief can be granted.[3] NRCP 12(b)(5); *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008) (explaining that dismissal is warranted "if it appears beyond a doubt that [the plaintiff] could prove no set of facts" that, if true, would entitle the plaintiff to relief); *see also Harris v. State*, 138 Nev. 403,

---

[2]Technically, here, the trier of fact must also (3) determine whether the defendant is one of the "cases expressly directed or permitted in this constitution." Nev. Const. art. 3, § 1(1). The individual defendants do not argue that the carveout protects them in this case.

[3]One could lose sight of this because the majority does not mention NRCP 12(b)(5) or the pleading standards in its analysis. But I cannot agree with its conclusion because the majority implies, absent an adequate factual record, that it is impossible for NPRI to state a claim against the individual respondents.

407, 510 P.3d 802, 807 (2022). We "review a district court order granting a motion to dismiss de novo." *Zohar v. Zbiegien*, 130 Nev. 733, 736, 334 P.3d 402, 404 (2014). We "accept[ ] the plaintiffs' factual allegations as true." *Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 823, 221 P.3d 1276, 1280 (2009). And an order granting a motion to dismiss "will be affirmed only where it appears beyond a doubt that the plaintiff could prove no set of facts that would entitle him or her to relief." *Zohar*, 130 Nev. at 736, 334 P.3d at 405 (cleaned up).

In my view, NPRI has stated a possible claim of a constitutional violation against the individual respondents based on the bedrock principle that "no persons" shall violate the division of powers. Nev. Const. art. 3, § 1(1). At this stage, we must merely determine whether NPRI has stated a possible, not necessarily plausible, claim for relief against any of the individual respondents. "Under our notice-pleading standard, we liberally construe the pleadings for sufficient facts that put the defending party on adequate notice of the nature of the claim and relief sought." *Harris*, 138 Nev. at 407, 510 P.3d at 807 (cleaned up). Thus, NPRI has the burden of pleading that the individual respondents are (1) charged with the exercise of powers properly belonging to the Legislature and (2) exercise any functions appertaining to the Executive or Judicial branches. As to the first requirement, it is undisputed that the respondents exercise legislative power as sitting legislators. NPRI has averred the second requirement by alleging that respondents also exercise functions appertaining to the Executive branch through their respective dual service. For example, positions in higher education receive much of their funding and initiative support from the Legislature. Dual service could possibly impose conflicts of interests on an individual legislator. Thus, NPRI should be permitted to

test whether the legislator respondents actually exercise functions appertaining to the Executive or the Judicial departments by the evidentiary process.

None of the cases cited by any of the individual respondents forecloses the possibility of a division-of-powers violation by an individual employed by NSHE or in local government because this court has never addressed these issues. For example, while *State ex rel. Mathews v. Murray* may stand for the proposition that the director of the driver's license division of the public service commission does not violate the division-of-powers clause by serving as a State Senator, 70 Nev. 116, 119-20, 258 P.2d 982, 983 (1953), presumably, the director of the driver's license division exercises different functions from a university professor or a county public defender. However, this case has no evidentiary record upon which to determine what functions the university professor-respondent or public defender-respondent actually exercises. I think it possible that some NSHE or county employees could exercise functions appertaining to the Executive branch, and I do not believe much imagination is required to conceive of such a scenario. Even the majority can conceive it possible, albeit in the narrow case of county prosecutors. Majority op. at 13 n.4. So, I would hold that NPRI has stated a possible claim for relief under the Constitution.

By contrast, the majority takes too myopic a view as to whether the individual respondents exercise a function appertaining to the Executive branch. I first address its analysis of respondent Dina Neal. The majority reasons that the NSHE is not part of the Legislative, Executive, or Judicial departments. Majority op. at 8-11. It concludes that Neal does not violate the separation-of-powers principle by serving as an employee of Nevada State College and on the Legislature. Majority op. at 11. I disagree

for two reasons: The majority confuses the NSHE with the individuals who comprise the NSHE, and it conflates the source of the NSHE's power with whether any individual performs any function appertaining to a department of government.

The majority relies on an unstated premise: If the institution of the NSHE does not violate the separation of powers, then its individual members must not either. It does not support this assumption with any authority, nor does it explain why the assumption must be true. Instead, it takes a leap of faith. It jumps from "the NSHE is not within the executive department" to "Nevada State College is a college within the NSHE" before landing at "Neal's dual service as an employee of Nevada State College and as a member of the Nevada Assembly does not violate the separation of powers." Majority op. at 11. But the majority does not explain how it got there or how it can be assured that Neal does not perform any function appertaining to either the Executive branch or the Judicial branch.

This exemplifies the problem with trying to draw conclusions about individuals from the characteristics of the organizations to which they belong. The organization and the individual are not the same. The constitution calls for a specific inquiry into the person charged with violating the division of powers. Nev. Const. art. 3, § 1(1) ("[N]o *persons* charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to the others . . . ." (emphasis added)). This is because Neal, not the NSHE or Nevada State College, is the person charged with the exercise of powers properly belonging to one of the departments of government. Neal is a member of the Legislature, and the inquiry must therefore focus on the nature of the functions she performs, rather than the nature of the functions performed

by the NSHE or any other institution. This sort of analysis, on an individual basis, would permit a court to answer the thorny questions raised at oral argument.[4]

Furthermore, the majority focuses on the constitutional source of the NSHE's power rather than the functions it exercises. It rules out the three departments to conclude that the NSHE exists in an unnamed, discrete department of state government. This is both legal error and contradictory to the constitution. *Cf.* Nev. Const. art. 3, § 1(1) ("The powers of the Government of the State of Nevada shall be divided into three separate departments . . . .").

For example, the majority argues that *State ex rel. Richardson v. Board of Regents of University of Nevada*, 70 Nev. 144, 261 P.2d 515 (1953), supports the conclusion that the NSHE Board is not part of the Executive branch. I do not believe this court either said or implied any such thing. To the contrary, it held that the Board's post-hearing firing of a professor constituted the exercise of judicial power rather than executive power. *State ex rel. Richardson*, 70 Nev. at 148, 261 P.2d at 517 ("Under such circumstances the act of the board was judicial in its nature."). And the premise for which the majority cites the case does not connect to its conclusion. Even if the Board's actions are susceptible to judicial review, so are many actions that constitute the exercise of a function appertaining to

---

[4]At oral argument, the parties discussed vocations across the spectrum of potential constitutional violations: county prosecutors on one end, college janitors on the other. A separation-of-powers test that focuses on the individual, rather than the institution, would provide clarity as to these cases. Arguably, a Nevada State College janitor does not plausibly exercise any function appertaining to the Executive branch, while a strong case can be made that a local prosecutor does.

any of the three branches of government. This court often reviews the constitutionality of statutes passed by the Legislature, actions taken by the Executive branch, and orders issued by the Judiciary. The mere fact that judicial review applies to a body does not render it immune from compliance with the constitutional principle of division of powers. The majority's struggle to identify which department NSHE falls into is a symptom of its attempt to resist the express language used by our framers.

I believe the majority errs in both the substance and the method of its analysis. It attempts to discern far-reaching principles about the nature of power exercised by the NSHE from wisps of sentences taken across various cases. But none of the cases it cites addresses the issue we face today; nor do their holdings preclude the claims brought by NPRI.

We have previously expressed what constitutes the exercise of executive power. We did not focus on the source of constitutional authority; instead, we derived a bright-line rule. "The executive power extends to carrying out and enforcing the laws enacted by the Legislature." *Galloway v. Truesdell*, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967). The dispositive question that the majority should have asked in this case is whether any employee of NSHE exercises any function appertaining to carrying out and enforcing the laws enacted by the Legislature. Such an inquiry fits neatly within the constitutional confines of article 3, section 1(1).

Even if the majority's conclusion is ultimately correct, that the nonparty institutions or individual respondents do not exercise any function appertaining to another department, in reaching that conclusion now, it abandons the principles that guide us in every other case at the dismissal stage of a lawsuit. "[I]nferences in the complaint are drawn in favor of the plaintiff." *Harris*, 138 Nev. at 407, 510 P.3d at 807. In a rush to resolve the

issue, the majority makes conclusions about whether the individual respondents' dual employment violates the separation-of-powers clause. We must be cognizant that the parties have yet to engage in discovery or identify evidence tending to prove or disprove NPRI's claims. The majority does not mention the pleading standards in its analysis, but its conclusion implies it is impossible for NPRI to state a claim against the individual respondents. And it does not base that determination on the text of the constitution or upon record evidence as to the functions exercised by any respondent.

I also find problematic the majority's internal inconsistency, as it holds that "[l]ocal government employees are distinguishable from employees of a state government department for separation-of-powers purposes," Majority op. at 13, but leaves open the possibility of suit against county prosecutors, who are clearly local government employees. If a case may be tried specifically against county prosecutors, why would the same principle not apply to other county employees? The proper analysis would focus on the functions exercised by each local respondent, but the same flaws arising in the majority's analysis of Neal appear in its treatment of the local respondents. The majority finds it impossible that any local respondent violates the separation of powers not based on evidence pertaining to those respondents, but on an extra-jurisdictional look to California's since-amended constitution and various other states' court decisions. And again, the majority does not mention the text of Nevada's constitution except in comparison to the first draft of California's. We should adhere to our steadfast principle that where constitutional text is unambiguous, we need not address legislative history or secondary sources of authority.

The public legitimacy and reputation of our Legislature, Executive branch, and Judiciary rely upon the performance of the individuals who comprise these departments. Nevada's constitution protects the division of powers among those individuals with a resolute prohibition: No person charged with the power of one branch shall exercise any functions appertaining to the others. The majority forecloses that NPRI could state a possible case against specific legislators for violating the division of powers based on reasons extratextual to the constitution and unsupported by facts specific to those individuals.

Contrary to the majority, I am not convinced that the district court reached the right outcome here albeit for the wrong reasons. Because I would reverse the district court's order and remand the case for further proceedings, I dissent.

_____, J.
Herndon

Supreme Court
OF
Nevada

(O) 1947A

PICKERING, J., concurring in part and dissenting in part:

I agree with the majority that Ohrenschall's service as a deputy Clark County public defender is compatible with his dual service as a legislator. But I disagree with the majority's determination that NSHE is not organized within the executive department, as well as its analyses regarding Neal, Torres, and Miller.

The separation of powers "is probably the most important single principle of government declaring and guaranteeing the liberties of the people." *Galloway v. Truesdell*, 83 Nev. 13, 18, 422 P.2d 237, 241 (1967). Like the United States Constitution, the Nevada Constitution divides the government into three separate departments. *See* U.S. Const. arts. I-III; Nev. Const. arts. 4-6. But in article 3, section 1, "Nevada's Constitution goes one step further," setting forth an express separation-of-powers clause. *State v. Second Jud. Dist. Ct. (Hearn)*, 134 Nev. 783, 786, 432 P.3d 154, 158 (2018) (internal quotes omitted). The Nevada Constitution's separation-of-powers clause declares that

> [t]he powers of the Government of the State of Nevada shall be divided into three separate departments,—the Legislative,—the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases expressly directed or permitted in this constitution.

Nev. Const. art. 3, § 1.

Constitutional interpretation must begin with the constitution's language. *Landreth v. Malik*, 127 Nev. 175, 180, 251 P.3d 163, 166 (2011). In interpreting the constitution's words, this court should look to their definitions at the time of drafting. *See Strickland v. Waymire*,

126 Nev. 230, 234, 235 P.3d 605, 608 (2010) ("The goal of constitutional interpretation is to determine the public understanding of a legal text leading up to and in the period after its enactment or ratification.") (internal quotes omitted). Not only does the separation-of-powers clause delineate the three separate departments of our state government, but it also contains an "express provision prohibiting any one branch of government from impinging on the functions of another." *Hearn*, 134 Nev. at 786, 432 P.3d at 158 (internal quotes omitted). That provision, the article 3, section 1 dual-service prohibition, bars "persons charged with the exercise of powers properly belonging to one of these departments" from exercising "any functions, appertaining to either of the others."

This dual-service prohibition has two components. First, it applies to a person who is exercising the "powers properly belonging to one of these departments." Previously, we determined that the subset of state employees who possess government powers is limited. In *Galloway*, 83 Nev. at 20, 422 P.2d at 242, this court clearly defined who wields the powers of the legislative branch. "Legislative power is the power of law-making representative bodies to frame and enact laws, and to amend or repeal them." *Id.* Thus, only members of representative bodies exercise legislative power; those merely employed by the Legislature do not possess legislative power. *See also* Nev. Const. art. 4, § 1 (declaring that the "Legislative authority of this State shall be vested in a Senate and Assembly").

While the set of people exercising state government powers is narrow, the set of people exercising state government functions is broader. The second component of the dual-service prohibition bars anyone covered by the first component from exercising "any functions, appertaining to either of the other" branches of state government unless explicitly

authorized in the constitution to do so. While function and appertain are broader words than power, the second component of the dual-service prohibition does not include all government employees in its sweep.

That all four legislators here exercise the powers properly belonging to the legislative branch is beyond question. The sole separation-of-powers issue presented is whether, in their respective employments outside the Legislature, they also exercise any function appertaining to either the state judicial or executive branches. The majority concludes they do not, either because the legislators are employed by local government or, in Neal's case, employed by the state university system, which in its estimation falls somewhere outside the three branches of state government. I would instead focus the analysis on the language of our constitution's dual-service prohibition: Do these legislators exercise a *function*, and is that function *appertaining to* one of the other branches of state government?

Dictionaries contemporaneous with the Nevada Constitution's drafting define a "function" as "[t]he course of action which peculiarly pertains to any public officer." *Function, Webster's Complete Dictionary of the English Language* (1864), 550. A legal dictionary defined a "function" as "the occupation of an office; by the performance of its duties, the officer is said to fulfill his function." *Function*, John Bouvier, *A Law Dictionary Adapted to the Constitution and Laws of the United States of America and of the Several States of the American Union: With Reference to the Civil and Other Systems of Foreign Law* (1839), 435. The word "appertain" meant, at the time, to "belong or relate, whether by right, nature, appointment, or custom." *Appertain, Webster's Complete Dictionary of the English Language* (1864), 66.

Courts in several states with similar dual-service prohibitions have wrestled with how broadly the second component of the dual-service prohibition sweeps, arriving at contradictory conclusions. The California Supreme Court, interpreting the same prohibition in that state's constitution, limited its application to the "State Government, as contradistinguished from those [governments] which are to be hereafter created by legislative will, merely, as the incidents and auxiliaries of the former." *People ex rel. Att'y Gen. v. Provines*, 34 Cal. 520, 533 (1868). It also limited the prohibition's application to high-ranking officials like members of the Legislature and constitutional officers of the executive branch. *Id.* at 533-34. The Indiana Supreme Court interpreted the prohibition somewhat more broadly to include employees of officers, at least to the extent that those employees exercise powers delegated from officers. *State ex rel. Black v. Burch*, 80 N.E.2d 294, 299 (1948). But the Oregon Supreme Court read the same prohibition to sweep quite broadly and apply to schoolteachers; that court sought to avoid any "direct or indirect" influence by one branch of government over the other. *Monaghan v. Sch. Dist. No. 1, Clackamas Cnty.*, 315 P.2d 797, 801, 806 (1957) (internal quotes omitted).

In determining whether a legislator who is also a public employee exercises a function appertaining to one of the other branches, the contemporaneous definitions suggest that the dual-service prohibition sweeps more broadly than the California court found, but not so broadly as the Oregon court determined. The definitions of function make it clear that government functions are rooted in specific government offices. After all, functions "peculiarly" pertain to offices in one definition and stem from an office's specific "duties" in another. An office is not just any job—it is "a public charge . . . invested with some of the functions pertinent to

SUPREME COURT
OF
NEVADA

(O) 1947A

sovereignty, or having some of the powers and duties which inhere within the legislative, judicial, or executive departments of the government." *Black*, 80 N.E.2d at 299 (internal quotes omitted). Additionally, the definition of "appertain" makes it clear that the function must, "by right, nature, appointment, or custom," relate to one of the branches of government. That function the person is doing must relate in some legal, natural, appointed, or customary way to that branch of government.

For a person who exercises government power to violate the dual-service prohibition, therefore, that person must exercise some duty that is rooted in a public office that is itself a legal, natural, appointed, or customary part of a different branch of government than the one in which that person exercises power. A person exercising a function need not necessarily be an officer themselves. After all, officers may hire others and delegate their sovereign duties to these employees. *Black*, 80 N.E.2d at 301. But exercising a function requires more than the mere employment the Oregon court required. In short, the dual-service prohibition's language does not permit sweeping categorical exclusions.

The majority correctly concludes that article 3, section 1 does not bar James Ohrenschall's employment as a deputy Clark County public defender while also serving as a legislator. Were Ohrenschall a deputy district attorney, then he would clearly be exercising functions appertaining to the executive branch, as prosecutors represent the State of Nevada in all criminal prosecutions, *see* NRS 169.055, and the executive branch is charged with carrying out—"executing"—Nevada law. *See Del Papa v. Steffen*, 112 Nev. 369, 377, 915 P.2d 245, 250 (1996); *Caruso v. Eighth Jud. Dist. Ct.*, No. 82362, 2022 WL 1584695, at 3 (Nev. May 18, 2022) (Silver, J., dissenting) (unpublished). But Ohrenschall's duty as a deputy Clark

County public defender is different; his role is to hold the executive branch to the high burden of proof the constitution requires by defending people the State of Nevada is seeking to convict. Logic defies the conclusion that a person employed to represent individuals against the executive branch is, at the same time, somehow exercising a function appertaining to that department. *Cf. Steen v. App. Div., Super. Ct. of L.A. Cnty.*, 331 P.3d 136, 137 (Cal. 2014) (recognizing that "the discretionary power to initiate criminal prosecutions" is "a core function of the executive branch"). In my view, deputy county public defenders do not, without more, exercise functions appertaining to the executive department.

Whether Miller's and Torres's employment as public school teachers offends article 3, section 1 presents a closer call. Although this court has held that county and municipal entities are distinct from the state government, *Nunez v. City of North Las Vegas*, 116 Nev. 535, 540, 1 P.3d 959, 962 (2000), I would not categorically conclude, as the majority seemingly does, that no person who is employed in local government exercises state government functions. Though it seems unlikely that employment with a local government would offend the dual-service prohibition, there is no textual basis in the constitution for categorically excluding local government functionaries without considering whether those persons exercise functions appertaining to a branch of state government. Of course, this prohibition does not apply to purely local government dual service; local governments often meld the functions of different branches of government into single boards and positions. *See State v. Bd. of Comm'rs of Ormsby Cnty.*, 7 Nev. 392, 396-97 (1872) (holding that county officers may have duties that are sometimes "judicial, and at others

legislative and executive" without upsetting the separation-of-powers provision).

Determining whether a local government employee exercises executive functions depends on the position occupied and its duties and normally requires specific analysis. Yet, this determination will not necessarily be a factual inquiry, either. Judges may well in most cases determine whether a person, given their dual positions, exercises a function appertaining to another branch of state government as a matter of law. But as regards Miller and Torres, this court would be well served by full briefing and further factual findings before concluding their employment does not violate the separation-of-powers doctrine. Thus, I agree with Justice Herndon that this issue warrants further factual and legal development in the district court.

Finally, I disagree with the majority's decision to categorize NSHE as organized outside of the three governmental departments and, on that basis, to conclude Neal's employment does not offend the separation-of-powers doctrine. Importantly, neither Neal nor any of the other parties argued in their briefs to this court that NSHE is somehow a fourth branch of state government such that Neal's dual service as a legislator and an NSHE professor is permissible. In undertaking this analysis on its own, the majority disregards the principle that courts "rely on the parties to frame the issues for decisions and to assign to courts the role of neutral arbiter of matters the parties present." *State v. Eighth Jud. Dist. Ct. (Doane)*, 138 Nev., Adv. Op. 90, 521 P.3d 1215, 1221 (2022) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008); *see United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Though an appellate court "is not hidebound by the precise arguments of counsel," that does not justify the takeover of the

 

appeal by deciding questions that have not been raised. *Sineneng-Smith*, 590 U.S. at 380. And no party argued to this court that NSHE is organized outside of the three governmental departments. That the parties briefly addressed this point below does not justify addressing it now where the district court did not analyze those arguments and Neal does not resurrect them on appeal. *See id.*

Even were this issue properly before the court, I disagree with the majority's analysis. On its face, article 3, section 1 divides state government into three departments—legislative, executive, and judicial—no others. While it allows exceptions to the dual-service prohibition, those exceptions must be "expressly directed or permitted" by the constitution. Nev. Const. art. 3, § 1. Article 11 governs education and provides for the establishment of a *state* university. *Id.* art. 11, § 4. Though the Board of Regents is tasked with "control[ing]" the state university system, the Legislature retains power to establish the university "and all Professors in said University," who must take the state oath prescribed in article 15. *Id.* art. 11, § 5. Professors who fail to comply are not entitled to compensation from state funds. *Id.* The constitution directs the Board of Regents to organize and fund specific departments in the state university, and further requires the Legislature to ensure funding is maintained. *Id.* art. 11, § 8. Tellingly, nothing in article 11 expressly directs or directs an exception taking NSHE outside of article 3, section 1.

Next, though the constitution grants NSHE and the Board of Regents substantial autonomy, it stops short of granting NSHE and the Board full autonomy. *Cf. Bd. of Regents v. Oakley*, 97 Nev. 605, 607-08, 637 P.2d 1199, 1200-01 (1981) (rejecting the idea that the Board of Regents has "unique constitutional status" or "virtual autonomy" from the Legislature).

SUPREME COURT
OF
NEVADA

(O) 1947A

NSHE's position in this regard is not unusual: The constitution creates other autonomous offices, like that of the Secretary of State, the Treasurer, the Controller, and the Attorney General, that fall within the executive branch. *Id.* art. 5, § 19. And for that reason, the Governor is vested with the "supreme" executive power, for while other constitutional officers may exercise executive power, the Governor heads the executive branch. *Id.* art. 5, § 1.

Because NSHE is a state organization that is not given full autonomy or separate status by the constitution, it follows that NSHE must fall under one of the three branches of state government. Nothing in the constitution suggests NSHE falls under the judicial or legislative branches, so it falls under the executive branch, a deduction that tallies with our prior characterization of the Board of Regents as operating in an executive and administrative capacity, as well as the long-held view that education is a function of state or local government. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954) ("[E]ducation is perhaps the most important function of state and local government."); *Richardson v. Bd. of Regents*, 70 Nev. 144, 147-48, 261 P.2d 515, 516-17 (1953) (referring to the Board's "executive and administrative capacity") (internal quotes omitted).

To hold otherwise goes against the plain language of the constitution and the reasoning many other courts have employed in addressing whether a state university and its employees come under the executive branch. *Cf. Stolberg v. Caldwell*, 402 A.2d 763, 769-71 (Conn. 1978) (rejecting the argument that its constitution intended to establish state colleges as autonomous and outside the three branches of state government); *Galer v. Bd. of Regents of the Univ. Sys.*, 236 S.E.2d 617, 618 (Ga. 1977) (stating that state universities are agencies of the executive

SUPREME COURT
OF
NEVADA

(O) 1947A

branch of state government); *Univ. of Ky. v. Moore*, 599 S.W.3d 798, 805-10 (Ky. 2019) (concluding the state university falls under the executive department even though it is also an independent state agency); *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 289 n.8 (Minn. 2004) (noting that the state constitution specifically describes three branches of government and rejecting the idea that the university is a separate branch); *Van Slyke v. Bd. of Trs.*, 613 So. 2d 872, 876-79 (Miss. 1993) (concluding that, as a constitutionally organized state agency, the Board of Trustees over higher learning was part of the executive branch); *Spire v. Conway*, 472 N.W.2d 403, 409-12 (Neb. 1991) (concluding that because there are only three branches of government, and the state university system and the Board of Regents are not in the legislative or judicial branch, they are an administrative or executive agency and a member of the executive branch); *Nord v. Guy*, 141 N.W.2d 395, 402 (N.D. 1966) (concluding that where the board was created to control and administer the state higher education institutions, this power was administrative and put higher education and the board under the executive branch rather than creating some separate "miniature legislature"); *S.D. Bd. of Regents v. Meister*, 309 N.W.2d 121, 123-24 (S.D. 1981) (concluding higher education fell within the executive branch where the education statutes were added as part of an executive reorganization); *Hartigan v. Bd. of Regents of W. Va. Univ.*, 38 S.E. 698, 699 (W.V. 1901) (calling the university system an "arm of the state government" that belongs to the executive department); *Kaye v. Bd of Regents of Univ. of Wis. Sys.*, 463 N.W.2d 398, 400 (Wis. Ct. App. 1990) (recognizing that the university system and the Board of Regents fall under the executive branch). Further, elevating NSHE to the status of a coordinate branch of government not

answerable to one of the three branches of state government could give the Board of Regents far more autonomy than was ever envisioned by the founders, leading to unintended consequences. *See, e.g., Star Tribune*, 683 N.W.2d at 289 (noting similar concerns).

Given the complexity of this issue, the extensive caselaw in other states regarding similar issues, the lack of briefing, and the importance of our decision on this point, this court would benefit substantially from targeted appellate briefing on this issue and, even more, from adequate factual development and a district court decision below. Until that happens, this court should neither reach the issue of whether NSHE stands independent from the three branches of government nor conclude that Neal's employment as a university professor does not offend the separation-of-powers clause's dual-service prohibition.

For these reasons, while I concur with my colleagues that Ohrenschall's dual service in the Legislature and as a deputy Clark County public defender does not offend the Nevada Constitution, I otherwise respectfully dissent and would vacate and remand for further legal and factual development of the issues outlined above.

_____, J.
Pickering

LEE, J., concurring in part and dissenting in part:

I concur with the majority that the district court did not violate the party-presentation principle by sua sponte invoking the incompatible-offices doctrine. While the party-presentation principle requires courts to "rely on the parties to frame the issues for decision," *Greenlaw v. United States*, 554 U.S. 237, 243 (2008), I find that the application of the incompatible-offices doctrine is sufficiently consistent with the separation-of-powers question framed by the parties. Both matters concern the proper separation of three branches of government, and, despite one drawing from constitutional law and the other from the common law, the core issue is the same. As the majority notes, the party-presentation doctrine does not require an orthodox adherence to the exact arguments presented by the parties. *See United States v. Sineneng-Smith*, 590 U.S. 371, 380 (2020); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). And it is within a court's power to "identify and apply the proper construction of governing law," even, and perhaps especially, when the parties have failed to do so themselves. *Kamen*, 500 U.S. at 99. Because of this, I agree with the majority's assessment that the district court did not violate the principle of party presentation by analyzing this issue under the incompatible-offices doctrine.

I also agree with the majority's assessment on the remaining ancillary issues. Namely, I agree that the respondents' motions to dismiss were not successive and therefore NPRI was not entitled to relief under NRCP 12(g)(2). Additionally, I join the majority's view that NPRI was not required to comply with relevant statutory provisions for waiving sovereign immunity because no issue of sovereign immunity existed. Lastly, I agree with the majority's conclusion that NPRI was not required to join additional

parties because (1) the public interest exception negates this requirement, (2) the parties were not necessary to analyze the constitutionality of dual employment, and (3) the litigation did not create a risk of subjecting these nonparties to multiple or inconsistent obligations.

However, I part ways with the majority's handling of the separation-of-powers issue, and here I side with my dissenting colleague, Justice Herndon. I agree with Justice Herndon that the majority's view oversimplifies the determination of whether individual respondents exercise a function of the executive branch. The majority would have us consider whether a legislator creates a separation-of-powers issue merely by maintaining a position with a particular department of government, not by the specific capacity and powers of the individual legislator. The majority places the focus on the department, not on the individual. I find this focus misplaced, and I instead believe that the respondents must be evaluated on a case-by-case basis to determine whether they each *individually* exercise executive power in their nonlegislative role, thus violating the separation of powers. I agree with my colleague Justice Herndon's assessment that "[t]he dispositive question that the majority should have asked in this case is whether any employee of NSHE exercises any function appertaining to carrying out and enforcing the laws enacted by the Legislature." Concurrence/dissent (Herndon, J.) at 15. For this reason, I respectfully dissent and would reverse the district court's order and remand for further findings consistent with my dissent.



_____, J.
Lee