142 Nev., Advance Opinion 40

## IN THE SUPREME COURT OF THE STATE OF NEVADA

PLANNED PARENTHOOD MAR
MONTE, INC., A CALIFORNIA
NONPROFIT CORPORATION; AND DR.
DOE, AN INDIVIDUAL,
Appellants,
vs.
THE STATE OF NEVADA EX REL. THE
OFFICE OF THE NEVADA ATTORNEY
GENERAL; AND ATTORNEY
GENERAL OF NEVADA,
Respondents.

No. 91394



FILED

MAY 28 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion for a preliminary injunction. Eighth Judicial District Court, Clark County; Erika Mendoza, Judge.

*Reversed and remanded.*

Planned Parenthood Federation of America and Valentina De Fex, New York, New York, and Hannah Swanson, Washington, D.C.; Bravo Schrager LLP and Bradley S. Schrager and Daniel Bravo, Las Vegas; Gibson, Dunn & Crutcher LLP and Grace E. Hart and Brian Yeh, New York, New York, and Hui Fang, Washington, D.C.,
for Appellants.

Aaron D. Ford, Attorney General, Heidi J. Parry Stern, Solicitor General, and Jeffrey M. Conner, Chief Deputy Solicitor General, Carson City,
for Respondents.

American Civil Liberties Union of Nevada and Christopher M. Peterson, North Las Vegas,
for Amici Curiae American Civil Liberties Union and American Civil Liberties Union of Nevada.

26-24174

McLetchie Law, PLLC, and Lisa A. Rasmussen, Margaret A. McLetchie, and Leo S. Wolpert, Las Vegas,
for Amici Curiae Silver State Hope Fund; Wild West Access Fund; University of Nevada, Las Vegas, William S. Boyd School of Law's Survivor Representation and Advocacy Clinic Within the Thomas and Mack Legal Clinic; National Network of Abortion Funds; If/When/How; and the National Center for Youth Law.

---

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, HERNDON, C.J.:

In 1985, the Nevada Legislature passed Senate Bill 510, requiring persons under the age of 18 to notify their parent or guardian, or obtain judicial approval, before receiving an abortion. Enforcement of the law was enjoined before it took effect pursuant to federal injunction. Recently, the federal injunction was vacated, and S.B. 510 took effect in July 2025. At that time, Planned Parenthood Mar Monte (PPMM) and Dr. Doe sued in state court, challenging the law as unconstitutional. In this appeal, we consider the state district court's denial of their motion for a preliminary injunction against S.B. 510's enforcement.

Broadly, the questions presented to this court are whether appellants satisfy standing and ripeness requirements and whether they satisfied the components for a preliminary injunction to issue. We conclude that appellants demonstrated injury and thus have standing to challenge aspects of S.B. 510 and that the matter is ripe for review. As to the preliminary injunction, we conclude that appellants demonstrated a reasonable likelihood of success and irreparable harm and that the balance

of hardships against public interests favors appellants. Therefore, we reverse the order denying the preliminary injunction.

## FACTS AND PROCEDURAL HISTORY

Nevada regulates abortion healthcare through a combination of laws and regulations found in NRS Chapter 442 and corresponding Nevada Administrative Code provisions. Healthcare providers may offer abortion services during the first 24 weeks of pregnancy. NRS 442.250(1)(b).

In 1985, Nevada lawmakers passed S.B. 510, establishing certain processes for patients under the age of 18 who wish to receive an abortion. These processes were codified under NRS 442.255 and NRS 442.2555, and violation of them was criminalized per NRS 442.257. Before the laws could take effect, however, the federal district court preliminarily enjoined the statutes. *Glick v. McKay*, 616 F. Supp. 322, 325-27 (D. Nev. 1985); *see also Planned Parenthood Monte Mar, Inc. v. Ford*, 349 F.R.D. 213, 218 (D. Nev. 2025) (providing historical context). The Ninth Circuit affirmed, holding that the enjoined provisions did not "sufficiently protect a pregnant minor's constitutional right to an abortion." *Glick v. McKay*, 937 F.2d 434, 442 (9th Cir. 1991), *abrogated by Lambert v. Wicklund*, 520 U.S. 292 (1997). Following litigation on the merits, the federal district court declared the statutes unconstitutional under *Roe v. Wade*, 410 U.S. 113 (1973), and entered permanent injunctive and declaratory relief barring enforcement of NRS 442.255, NRS 442.2555, and NRS 442.257. *Glick v. McKay*, No. C-R-85-331-ECR, 2023 WL 12064153, at *2 (D. Nev. Oct. 10, 1991; refiled Nov. 16, 2023).

In December 2023, two Nevada district attorneys filed a motion for relief from the federal district court's judgment under FRCP 60(b)(5), arguing that the previous judgment was no longer equitable, in part, due to *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022), which

Supreme Court
of
Nevada

overruled *Roe v. Wade* and thus eliminated the basis for the injunction. *Planned Parenthood Monte Mar*, 349 F.R.D. at 218. The federal district court granted the motion and vacated the permanent injunction and final judgment. *Planned Parenthood Monte Mar*, 349 F.R.D. at 228. Ultimately, NRS 442.255, NRS 442.2555, and NRS 442.257 took effect on July 22, 2025. *Planned Parenthood Monte Mar*, No. 3:85-cv-00331-ART-CSD, ECF No. 150 (D. Nev. July 22, 2025) (Order Lifting Administrative Stay).

In July 2025, Planned Parenthood Mar Monte and Dr. Doe challenged S.B. 510 in state court, naming the State of Nevada and the Nevada Attorney General (collectively, the State) as defendants. PPMM is a nonprofit corporation licensed to operate in Nevada that provides health care and education through its health centers. PPMM, through Nevada licensed physicians, provides reproductive healthcare at its centers in Reno and North Las Vegas. PPMM provides medication abortions up to 11 weeks after the patient's last menstrual period and in-clinic abortions (also known as procedural abortions) up to 12 weeks from a patient's last menstrual period. Dr. Doe is an anonymous physician who is licensed to practice medicine and who performs abortions in Nevada.

Appellants moved for a temporary restraining order and a preliminary injunction, arguing S.B. 510 was void from inception and beyond the legislature's authority to enact, is unconstitutionally vague, and violates their patients' procedural due process rights. The district court denied the preliminary injunction, finding standing and ripeness requirements were met only as to certain issues and that appellants had not sufficiently demonstrated a likelihood of success on the merits and injury, and this appeal followed.

## DISCUSSION

*S.B. 510*

As enacted, S.B. 510 contains two relevant parts. The first: under NRS 442.255(1), a physician cannot perform an abortion on an "unmarried and unemancipated" patient under 18 unless their custodial parent or guardian is "personally notified." And if the parent or guardian cannot be personally notified "after a reasonable effort, the physician shall delay performing the abortion until the physician has notified the parent or guardian by certified mail at the last known address of the parent or guardian." NRS 442.255(1). Hereinafter, we refer to the portion of NRS 442.255(1) that requires notice be provided to a parent or guardian as the "parental notification provision."[1]

The second: under NRS 442.255(2), the patient can "request a district court to issue an order authorizing an abortion[, and, i]f so requested, the court shall interview the patient at the earliest practicable time, which must not be more than 2 judicial days after the request is made." The court must issue an order authorizing or denying the abortion within one judicial day of the interview. NRS 442.255(2)-(3). If the court

---

[1]NRS 442.255(1) states, in relevant part, that:

> [A] physician shall not knowingly perform or induce an abortion upon an unmarried and unemancipated woman who is under the age of 18 years unless a custodial parent or guardian of the woman is personally notified before the abortion. If the custodial parent or guardian cannot be so notified after a reasonable effort, the physician shall delay performing the abortion until the physician has notified the parent or guardian by certified mail at the last known address of the parent or guardian.

does not timely enter an order, authorization is deemed to have been granted. NRS 442.255(3). In other words, NRS 442.255(3) allows the court to provide a "pocket approval" by inaction. If the district court timely denies the abortion, NRS 442.2555 establishes an appeals process for patients to request reconsideration. Hereinafter, we refer to NRS 442.255(2)-(4), which contain the request for judicial authorization provision and the pocket approval provision, and NRS 442.2555 in totality as "the judicial bypass provisions."

Additionally, under NRS 442.256, physicians who perform abortions must maintain records for at least five years after the procedure. The records must contain a consent form, a statement of the information provided to the patient, and a description of efforts to give notice to the custodial parent or guardian as required under NRS 442.255. NRS 442.256(1)-(3). Anyone who violates any of these provisions—from notice to the custodial parent or guardian, to a request for judicial authorization, to reliance on pocket approval authorization, to recordkeeping—may be criminally prosecuted. NRS 442.257; *see* NRS 193.150 (punishment for a misdemeanor is up to six months of imprisonment, a monetary fine of up to $1,000, or both).

*Standing*

Standing is a question of law we review de novo. *Logan v. Abe*, 131 Nev. 260, 263, 350 P.3d 1139, 1141 (2015). "The Nevada Constitution does not include the 'case or controversy' requirement stated in Article III of the United States Constitution, so we are not strictly bound to federal constitutional standing requirements." *Nat'l Ass'n of Mut. Ins. Co. v. State, Dep't of Bus. & Indus.*, 139 Nev. 18, 22, 524 P.3d 470, 476 (2023). However, "as a prudential matter and because of the justiciability requirements the separation-of-powers doctrine imposes on the Nevada judiciary, our caselaw

generally requires the same showing of injury-in-fact, redressability, and causation that federal cases require for Article III standing."[2] *Id.* (citations omitted).

*Appellants demonstrated injury as to the judicial bypass provisions*

The district court found appellants had standing to challenge the parental notification and pocket approval provisions but did not have standing as to the request for judicial authorization provision, as they did not need to understand how the request for judicial authorization provision works in order to comply with their duties under the other provisions. Appellants argue the district court erred in concluding they did not establish injury in fact stemming from potential enforcement of the provisions allowing for the judicial bypass method of securing an abortion as a whole.

We agree, as appellants' challenge to the judicial bypass provisions cannot be parsed by subsection in this manner. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Appellants argue that the threat of enforcement as to the judicial bypass provisions gives them a special or peculiar injury that is

---

[2]The State argues for a heightened evidentiary burden of proof for standing for a preliminary injunction "commensurate with the substantive evidentiary burden for a preliminary injunction." We decline to address this applicable standard of proof argument as it was not raised below and thus not addressed in the district court's order. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (explaining arguments raised for the first time on appeal are waived).

different than one sustained by the general public. *See id.* at 339 ("For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." (internal quotation marks omitted)). Indeed, appellants could be held criminally liable, by way of NRS 442.257, for providing an abortion without judicial authorization—either by order or by inaction—under the bypass provisions. The pocket approval subsection does not exist separately from the request for judicial authorization subsection; rather, they are inextricably intertwined, as each is dispositive of a request for judicial authorization. Thus, appellants' injury is particularized as to the entirety of the judicial bypass provisions.

Moreover, the threat of enforcement is sufficiently concrete to establish standing. *See Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979) (recognizing a plaintiff satisfies the injury in fact requirements when he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder"). Dr. Doe's declaration explains that appellants provide minors with medication abortions up to 11 weeks, or procedural abortions up to 12 weeks, and that, due to uncertainty from the judicial bypass provisions, they are unable to confidently perform the procedure if minors cannot demonstrate the procedure has been judicially authorized. This evidence, in conjunction with the fact that two of Nevada's elected district attorneys took the affirmative step of reinvigorating a dormant federal lawsuit to lift a decades-old injunction and activate the statutes, leads us to conclude that appellants face a credible threat of prosecution.

*Appellants satisfy causation and redressability*

The State argues that appellants' general standing theory suffers from deficiencies on causation and redressability because potential

Supreme Court

OF

Nevada

8

enforcement of the parental notification provision is not fairly traceable to any actions of the Attorney General. Specifically, the State argues that causation is not satisfied because appellants fear prosecution based on statements from district attorneys, not from the Attorney General. And that redressability is also not satisfied because a preliminary injunction that prevents the Attorney General from enforcing NRS 442.255 does not redress appellants' fears of prosecution, as the fear comes from independently elected county district attorneys who were not named as defendants.

In the district court, the State did not dispute causation and conceded that Dr. Doe had standing to challenge the parental notification and pocket approval provisions. As a result, appellants argue that causation generally, and redressability as to Dr. Doe and the parental notification and pocket approval provisions, should not be considered on appeal given the State did not cross-appeal the district court's conclusions. But, in this case, the State contests a factor within the broader standing argument that *was* addressed below. Accordingly, we address the State's argument.

Regarding the merits, we conclude that the causation requirement is satisfied against the Attorney General, even though the district attorneys are not named, because a "[c]hallengers' standing is not short-circuited by the fact that there are multiple authorized enforcers for the statute." *Matsumoto v. Labrador*, 122 F.4th 787, 798 (9th Cir. 2024); *see also Bronson v. Swenson*, 500 F.3d 1099, 1110 (10th Cir. 2007) ("[T]he causation element of standing requires the named defendants to possess authority to enforce the complained-of provision."). Further, the State and the Attorney General have not disavowed enforcing S.B. 510, and the

Attorney General has also not announced he will attempt to prevent county prosecutors from enforcing the statute—factors that support the credible fear of enforcement. *See Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) ("[T]he state's refusal to disavow enforcement . . . is strong evidence that the state intends to enforce the law and that [the plaintiffs] face a credible threat."); *see also Chiles v. Salazar*, 607 U.S. ___, ___, 146 S. Ct. 1010, 1019 (2026) (affirming that a plaintiff alleges a "credible threat" that the State will enforce the law against them when authorities refuse to disavow bringing enforcement actions against the plaintiff).

Furthermore, appellants satisfied the redressability requirement. "Where a state statute specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities suffices to establish redressability." *Matsumoto*, 122 F.4th at 801. Although NRS Chapter 442 does not specifically grant enforcement powers to multiple government authorities as in *Matsumoto*, there are multiple actors who can enforce the provisions, and the Attorney General is one of them. *See* NRS 228.120(2)-(3) (providing, respectively, that "[the Attorney General may e]xercise supervisory powers over all district attorneys in the State in all matters pertaining to the duties of their offices" and "[a]ppear in, take exclusive charge of and conduct any prosecution in any court of this State for a violation of any law of this State"). Given that the Attorney General is a key actor for enforcement of Nevada laws, we conclude that naming the Attorney General as one of the defendants in a suit challenging the constitutionality of a statute is sufficient to satisfy causation and

redressability for standing.[3] Thus, we conclude that appellants satisfy the standing requirements.

*Ripeness*

Appellants argue the district court erred in concluding that their challenge to the judicial bypass provisions was not ripe for review. Ripeness is a question we review de novo. *See Or. Nat'l Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1031 (9th Cir. 2020). "[R]ipeness focuses on the timing of the action rather than the party bringing the action." *In re T.R.*, 119 Nev. 646, 651, 80 P.2d 1276, 1279 (2003). "The factors to be weighed in deciding whether a case is ripe for judicial review include: (1) the hardship to the parties of withholding judicial review, and (2) the suitability of the issues for review." *Id.*

In *Susan B. Anthony List v. Driehaus*, the United States Supreme Court found the hardship factor was satisfied when "denying prompt judicial review would impose a substantial hardship on petitioners," as it would force a choice "between refraining from core political speech on the one hand or engaging in that speech and risking costly Commission proceedings and criminal prosecution on the other." 573 U.S. 149, 167-68 (2014). Dr. Doe asserts that when patients cannot demonstrate judicial authorization, it delays or even impedes a physician's ability to provide care. Specifically, care must be delayed until the patient can demonstrate that the abortion is authorized under NRS 442.255 or NRS 442.2555. As appellants explain, the statute forces physicians into an impossible choice: deny urgently needed medical care or risk prosecution. Harm that can

---

[3]Because we conclude appellants demonstrate standing to challenge S.B. 510, we need not address whether appellants have third-party standing on behalf of patients.

cause a party "hardship" for ripeness is one that "force[s] [plaintiffs] to modify [their] behavior in order to avoid future adverse consequences," *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998), and thus we conclude that appellants have demonstrated hardship if judicial review is withheld.

Furthermore, a case is suitable for review when the challenge to the statute "presents an issue that is 'purely legal, and will not be clarified by further factual development.'" *Susan B. Anthony List*, 573 U.S. at 167 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). Appellants have raised questions of law regarding whether the judicial bypass provisions are facially vague. Because appellants bring solely a facial challenge and present issues that are purely legal and will not benefit from waiting for further factual development, we conclude the issues are ripe for review.

*Preliminary injunction*

For a preliminary injunction to issue, the moving party must "demonstrate that (1) 'it has a reasonable likelihood of success on the merits'; and (2) 'absent a preliminary injunction, it will suffer irreparable harm for which compensatory damages would not suffice.'" *Elk Point Country Club Homeowners' Ass'n v. K.J. Brown, LLC*, 138 Nev. 640, 642, 515 P.3d 837, 839 (2022) (quoting *Excellence Cmty. Mgmt., LLC v. Gilmore*, 131 Nev. 347, 351, 351 P.3d 720, 722 (2015)). Further, "courts [will] also weigh the potential hardships to the relative parties and others, and the public interest." *Univ. & Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 120 Nev. 712, 721, 100 P.3d 179, 187 (2004).

A decision on a motion for preliminary injunction is only reversible "when the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact."

Supreme Court
OF
Nevada

12

*Excellence Cmty. Mgmt.*, 131 Nev. at 351, 351 P.3d at 722 (internal quotation marks omitted). Questions of law are reviewed de novo. *Id.*

*Likelihood of success on the merits*

Appellants argue the district court erred in concluding they had not demonstrated a likelihood of success as to their arguments that S.B. 510 is unconstitutionally vague, was void from inception and beyond the legislature's authority to enact, and violates their patients' procedural due process rights.

As to the vagueness challenge, appellants argue that S.B. 510 does not provide adequate notice of proscribed conduct, allowing for discriminatory and arbitrary enforcement. "Vagueness may invalidate a criminal law for either of two independent reasons: (1) if it fails to provide a person of ordinary intelligence fair notice of what is prohibited; *or* (2) if it is so standardless that it authorizes or encourages seriously discriminatory enforcement." *State v. Castaneda*, 126 Nev. 478, 481-82, 245 P.3d 550, 553 (2010) (emphasis added) (citation modified). We have explained that "constitutional vagueness analysis does not treat statutory text as a closed universe" and clarity may be supplied by "judicial gloss on an otherwise uncertain statute, by giving a statute's words their well-settled and ordinarily understood meaning, and by looking to the common law definitions of the related term or offense." *Castaneda*, 126 Nev. at 483, 245 P.3d at 553-54 (emphasis omitted) (citation modified). Further, if the legislature's intention is clear, "it is the duty of the court to give effect to such intention and to construe the language of the statute to effectuate rather than nullify its manifest purpose." *Sheriff, Washoe Cnty. v. Martin*, 99 Nev. 336, 340, 662 P.2d 634, 637 (1983).

*The vagueness analysis standard for criminal statutes applies*

Appellants argue that the district court erred by applying the vagueness standard for civil statutes. We agree with appellants because, when a statute "involves criminal penalties or constitutionally protected rights," a higher standard applies and "the question becomes whether vagueness so permeates the text that the statute cannot meet these requirements in *most* applications." *Flamingo Paradise Gaming, LLC v. Chanos*, 125 Nev. 502, 512-13, 217 P.3d 546, 553-54 (2009) (emphasis added). The judicial bypass provisions are subject to criminal penalties because NRS 442.257 criminalizes violations of *"any* provision of NRS 442.252 to 442.256." NRS 442.257 (emphasis added). Because S.B. 510 imposes criminal penalties, we conclude the district court abused its discretion when it applied an erroneous legal standard: the vagueness standard for civil statutes. Instead, the district court should have applied the vagueness standard for criminal statutes where vagueness must be demonstrated to exist in *most* circumstances.

*The parental notification provision is unconstitutionally vague*

Under the proper standard, appellants argue that the parental notification provision is unconstitutionally vague. The State argues that the provision includes a scienter requirement, *see* NRS 442.255(1) ("a physician shall not *knowingly* perform or induce"), which helps avoid vagueness. "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice" a defendant receives, *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982), but it does not guarantee there is no vagueness that renders the statute unconstitutional. Thus, we address the other phrases in the parental notification provision.

Appellants argue there are no adequate guidelines to determine what suffices in NRS 442.255(1) for "personally notified" or "reasonable effort" to notify, or how law enforcement will assess whether a physician "has notified the parent or guardian by certified mail at the last known address of the parent or guardian." Under NRS 442.255(1), only after a "reasonable effort" is made to personally notify a parent or guardian can a physician proceed to utilizing certified mail. Accordingly, the failure to provide guidance to a physician as to what efforts allow them to justify forgoing personal notification in favor of certified mail is concerning. The lack of specificity arguably leaves it up to each potential investigating agency and thereafter, judge, to arbitrarily decide what effort is sufficient.

The phrase "personally notified" is also problematic. "Personally notified" plainly refers to direct communication to the parent or guardian about the procedure. *See Personally, Oxford Dictionary of English* (3d ed. 2010) (defining "personally" as "with the personal presence or action of the individual specified; in person"); *Notify, Oxford Dictionary of English* (3d ed. 2010) (defining "notify" as "inform (someone) or something, typically in a formal or official manner"); *Actual Notice, Black's Law Dictionary* (12th ed. 2024) (defining "actual notice" as "[n]otice given directly to, or received personally by, a party"). The legislative history also supports this meaning, as the legislature understood that "a telephone call or personal visit" or "the parent com[ing] to the abortion clinic" would count as "personally notified." Hearing on S.B. 510 Before the Assemb. Judiciary Comm., 63d Leg. (Nev., May 30, 1985). While the expectation that phone calls could suffice is reasonably clear, the statute is not reasonably clear that medical professionals may be expected to make "personal visit[s]" to attempt to locate and notify minor patients' parents or guardians. It is also unclear

SUPREME COURT
OF
NEVADA

15

whether the duty to "personally notify" a parent or guardian is a requirement imposed specifically on the physician—who is the individual directly at risk of criminal prosecution for failure to comply with the laws at issue—or whether it embraces notification occurring through medical office personnel as well. *See Flamingo Paradise Gaming, LLC*, 125 Nev. at 513-14, 217 P.3d at 554 (finding unconstitutionally vague a statute that failed to adequately define who holds the responsibility to prevent another from smoking in violation of the NCIAA and "what that responsibility entails").

Finally, the phrase "notified the parent or guardian by certified mail at the last known address of the parent or guardian," NRS 442.255(1), is somewhat clearer but still contributes to the parental notification provision's vagueness. At oral argument, the State withdrew from its position that physicians using certified mail must ensure *actual* notice—which runs counter to how notice by certified mail is considered under the law and in the legislative history for S.B. 510. *See Flangas v. Perfekt Mktg., LLC*, 138 Nev. 224, 230, 507 P.3d 574, 580 (2022) (noting that the use of certified mail accomplishes the notice element of due process, even though notification by certified mail may make *actual* notice less likely); *see also* Hearing on S.B. 510 Before the Assemb. Comm. on Judiciary, 63d Leg. (Nev., May 30, 1985) ("[An Assemblymember] wondered if the doctor could perform the abortion as soon as he put the notice in the certified mail and was told he could. It did not matter if the person addressed had received it."). Nonetheless, notice via certified mail still leaves much to be desired as to fair notice for the physician attempting to comply and the standardless enforcement that may result. This is largely because it is unclear how long a physician must wait after sending certified mail to proceed with an

abortion. And without more specificity as to how or when notice through certified mail is satisfied, the parental notification provision then lends itself to authorizing arbitrary enforcement. Relatedly, the timing for notice by certified mail that satisfies the parental notification provision is also critical as to a minor's ability to return for the procedure and to even receive the procedure—the difference of days could result in only being able to undergo procedural abortion, as opposed to medication abortion at PPMM, or not being able to receive the procedure at all.

We conclude that vagueness so permeates the text of the parental notification provision that the statute cannot meet the requirements in most applications. Thus, appellants demonstrate a reasonable likelihood of success on the merits as to their void-for-vagueness claim on the parental notification provision.

*The judicial bypass provisions are unconstitutionally vague*

Appellants argue that the judicial bypass provisions are unconstitutionally vague, as NRS 442.255 does not establish implementation procedures for judicial bypass. Appellants explain that physicians need to be able to identify whether their patients have obtained proper judicial authorization or they risk prosecution and that nothing in the statute limits how law enforcement will assess whether a physician has sufficiently demonstrated that judicial authorization has occurred.

We conclude that the judicial bypass provisions are vague as to what the physician must do and the standards that would be enforced. Under NRS 442.255, a physician may not perform an abortion via the judicial pathway unless they are certain of judicial authorization. But a physician does not have fair notice as to how to comply with ascertaining such authorization, which lends itself to authorizing seriously discriminatory enforcement. *See Flamingo Paradise Gaming, LLC,* 125

Supreme Court
of
Nevada

17

Nev. at 513-14, 217 P.3d at 554 (concluding that a statute that failed to explain "whether business owners . . . have a responsibility to stop someone who is smoking in violation of the [NCIAA] and if so, what that responsibility entails" is unconstitutionally vague). For example, can a physician rely solely on the representations of a patient? Does the physician have to ask the patient for documentation, so the physician can record it pursuant to NRS 442.256? Does the physician have to verify the document in some way? If the patient says they have pocket approval stemming from a district court's inaction, what kind of documentation can they provide? Can a patient tell the physician when the patient requested an interview with a court, such that if the patient is at least three days out from the interview date the physician can assume the absence of any document means pocket authorization has occurred? Does the physician have to attempt to access the court docket to find some record of the interview, which are required to be confidential pursuant to NRS 442.255(4)?

These questions demonstrate not only that the judicial bypass provisions provide insufficient notice to appellants, but also how the statute could allow seriously discriminatory enforcement, as enforcement authorities may challenge the method by which a physician determines judicial authorization occurred. *See Flamingo Paradise Gaming, LLC*, 125 Nev. at 514, 217 P.3d at 554 ("The statute fails to provide guidelines as to what action is required and how the statute is enforced, and therefore, it creates the possibility of arbitrary and discriminatory enforcement."). Because physicians face possible criminal prosecution and occupational harm pursuant to NRS 442.257, the lack of fair notice and the potential for standardless enforcement elevates our concerns. Thus, we conclude that in most applications, the judicial bypass provisions are not clear enough to

provide notice and standards to avoid discriminatory enforcement. Because appellants demonstrated a reasonable likelihood of success as to their vagueness claim regarding S.B. 510, we next assess whether appellants demonstrated irreparable harm.[4]

*Irreparable harm*

A preliminary injunction "is proper where the moving party can demonstrate that it has a reasonable likelihood of success on the merits *and that, absent a preliminary injunction, it will suffer irreparable harm* for which compensatory damages would not suffice." *Excellence Cmty. Mgmt., LLC v. Gilmore*, 131 Nev. 347, 350-51, 351 P.3d 720, 722 (2015) (emphasis added). Appellants have shown a reasonable likelihood of success on the merits of their constitutional claim that S.B. 510 is void for vagueness, and thus, they also demonstrate irreparable harm. *See City of Sparks v. Sparks Mun. Ct.*, 129 Nev. 348, 357, 302 P.3d 1118, 1124 (2013) ("As a constitutional violation may be difficult or impossible to remedy through money damages, such a violation may, by itself, be sufficient to constitute irreparable harm.").

*Balance of hardships and public interests*

Finally, courts "may . . . weigh the public interest and the relative hardships of the parties in deciding whether to grant a preliminary injunction." *Clark Cnty. Sch. Dist. v. Buchanan*, 112 Nev. 1146, 1150, 924 P.2d 716, 719 (1996).

---

[4]Given this conclusion, we need not address appellants' arguments that S.B. 510 is void ab initio and violative of procedural due process.

*The district court did not err when it considered parental interests and community views*

Appellants first argue the district court abandoned the principle of party presentation "by introducing independent arguments and evidence to support its holding that the balance of hardships did not favor a preliminary injunction." Specifically, appellants assert the district court improperly considered parents' interests and community views when balancing hardships.

The principle of party presentation "sets forth that courts rely on the parties to frame the *issues* of a given matter." *Nev. Pol'y Rsch. Inst., Inc. v. Miller*, 140 Nev., Adv. Op. 69, 558 P.3d 319, 331 (2024) (emphasis added). This court has recognized, however, that courts "may consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (internal quotation marks omitted); *see Nev. Pol'y Rsch. Inst., Inc.*, 140 Nev., Adv. Op. 69, 558 P.3d at 331. Thus, the district court was permitted to consider independent arguments and evidence that were relevant to its decision on balancing hardships and public interest.

*The relevant factors weigh in appellants' favor*

Appellants argue the district court erred in determining they failed to demonstrate that the balance of hardships and public interest weighed in favor of granting a preliminary injunction. Appellants assert the district court failed to consider that granting an injunction would preserve the status quo, the new requirements would restrict access to health care, and appellants and their patients have a strong interest in not being subject to unconstitutional laws.

Supreme Court
of
Nevada

20

Preserving the status quo and access to health care are factors that other courts have considered in their hardship or public interest analyses. For example, the Utah Supreme Court affirmed the grant of a preliminary injunction for a pre-*Dobbs* abortion statute that prohibited abortion at any point. *Planned Parenthood Ass'n of Utah v. State*, 554 P.3d 998, 1006-07, 1046 (Utah 2024). That court explained that the "appropriate time to determine the status quo is the last uncontested status between the parties which preceded the controversy" and that "[t]he last uncontested status between the State and [Planned Parenthood] existed before [the statute] took effect." *Id.* at 1045 (citation modified); *see also Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1125-26 (9th Cir. 2008) (acknowledging that "lack of timely access to health care poses serious health risks" and is a hardship and that the public has an interest in health). And because appellants have demonstrated a reasonable likelihood of success on one of their constitutional claims, there is an impacted interest in ensuring that appellants are not subject to unconstitutional laws.

Although the State rightly asserts that rights of parents have been repeatedly recognized as a fundamental interest even pre-*Dobbs*, *see H.L. v. Matheson*, 450 U.S. 398, 410 (1981) (explaining that the relationship between parent and child is constitutionally protected), and is a public interest that weighs towards denying preliminary injunction, preserving the status quo and access to healthcare are considerable interests in favor of granting a preliminary injunction. On balance, we conclude that the district court abused its discretion and that the hardship to appellants and the public interests involved favor appellants and warrant a preliminary injunction.

## CONCLUSION

We conclude that appellants have shown injury for standing and ripeness to challenge the judicial bypass provisions. As to the preliminary injunction, we conclude that appellants demonstrated a reasonable likelihood of success on their claim that S.B. 510 is unconstitutionally vague, that appellants demonstrated irreparable harm, and that the balance of hardships and public interests favor appellants. Accordingly, we reverse the order denying the request for a preliminary injunction and remand the matter to the district court with instructions to grant the preliminary injunction.

_____, C.J.
Herndon

We concur:

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA